HORACE B. CLAFLIN AND OTHERS, APPELLANTS, *v.* LEWIS S. LENHEIM, RESPONDENT.

*Principal and agent — duty of third person to inquire as to agent's authority — when agency inferred — how its extent and existence to be determined.*

A carried on business at Great Bend, in Pennsylvania, and had a store at Meadville, carried on in his name by his brother, who had purchased goods from plaintiffs on the credit and in the name of A, and with his authority. The store at Meadville was destroyed by fire, and thereafter no act was done by A showing that his brother had power to act as his agent, and the agency was in fact revoked. The brother, some time after the fire, purchased goods from plaintiffs for a new store at Meadville, and it was for the recovery of the price of these goods that the suit was brought. *Held,* that it was properly left to the jury to determine whether, upon the facts shown, the plaintiffs were not in good faith bound to inquire into the authority of the brother to bind A.

When an agency is to be inferred from the conduct of the principal, that conduct furnishes the evidence of its extent as well as of its existence.

APPEAL from a judgment entered on a verdict in favor of defendant, and from an order denying a motion for a new trial, made upon the minutes of the justice presiding at the Circuit.

*A. J. Vanderpoel,* for the appellants. There were no facts or circumstances proved from which notice to the plaintiffs of the revocation of the agent's authority could be legally inferred, and the learned judge erred in submitting such questions to the jury as decisive in the case, independent of proof of actual notice of such revocation. If the principal countermand the authority of the agent, such countermand will not take effect as to third persons until it is made known to them. (*Hazard* v. *Treadwell,* 1 Str., 506; *Anon.* v. *Harrison,* 12 Mod., 346; *Salte* v. *Field,* 5 T. R., 215; *Morgan* v. *Stell,* 5 Binney, 305; *Trueman* v. *Lodu,* 11 A. & E., 589; *Lamothe* v. *St. Louis M. R. and D. Co.,* 17 Miss., 204; *Beard* v. *Kirk,* 11 N. H., 398; Pars. on Con. [5th ed.], 70, 71.) Lapse of time is not notice in the absence of other circumstances. (*Morgan* v. *Stell,* 5 Binney, 305; *Anon.* v. *Harrison,* 12 Mod., 346, HOLT, Ch. J.) The application of the rule of constructive notice to the facts of this case, as shown to have been known to the plaintiffs, which was to result in their being cheated out of their goods, we submit cannot be justified. If mere want of caution, as distinguished from gross and culpable negligence, is all that can be imputed to a man, the doctrine of constructive notice will not apply. (Kerr on Fraud and Mistake, 238; *Jones* v. *Smith,* 1 Hare, 55; *West* v. *Reid,* 2 id., 249–259; *Ware* v. *Lord Egmont,* 4 D. G., M. & G., 460.) The question is not whether a man had the means of obtaining, and might by prudent caution have obtained, the knowledge in question, but whether the not obtaining it was an act of gross and culpable negligence. (Kerr, 239; *Wilson* v. *Small,* 6 Wall., 83; *Woodworth* v. *Paige,* 5 Ohio State, 70; *Briggs* v. *Taylor,* 28 Vt., 180; *Seybell* v. *Nat. Cur. Bank,* 54 N. Y., 288.) The same reason which has applied this rule to negotiable securities, would apply it to cases like the one at bar. The learned judge erred in submitting to the jury either of the questions submitted to them with the instruction that their finding either affirmatively was decisive in the case. (*Birdsall* v. *Russell,* 29 N. Y., 220, 249; *Williamson* v. *Brown,* 15 id., 354; *Welch* v. *Sage,* 47 id., 143.) There was no evidence upon which the jury would be authorized to find fraud or bad faith on the part of the plaintiffs, and, as this was necessary to justify the inference of notice, it should not have been left to the jury. (*Welch* v. *Sage,* 47 N. Y., 143, at page 147, and cases cited.)

*F. J. Fithian,* for the respondent. On an appeal from a judgment entered on the verdict of a jury, the facts cannot be reviewed, and an exception to the ruling, by which a motion for a new trial is denied, presents no question of law, if there is any evidence to support the verdict. (Code, §§ 268, 348.) No question of fact was taken from the jury, but every fact was submitted on the evidence, the admissions and the assumptions of the parties upon the trial. No exception was taken to the assumption of facts stated by the judge, and no question as to the correctness of his assumptions can be raised here. (*Beekman* v. *Bond,* 19 Wend., 444; *People* v. *Cook,* 4 Seld., 67; *Hoffman* v. *Ætna Fire Insurance Co.,* 19 Abb., 325; affirmed, 32 N. Y., 405.) The two litigated questions were presented and submitted separately and accurately, and no question can be raised that the jury did not understand the purport of the charge on either question. Good faith is the basis of the rule which enables a dealer to recover of a man for a credit given to a former agent whose authority has been revoked, or of the members of a firm for a credit given after dissolution. And when the circumstances are such as to put a prudent man, acting in good faith, on inquiry, and he neglects to make the inquiry, he does not act in good faith; and although he has received no express notice, he is chargeable with such notice as the inquiry would divulge. The circumstances are constructive notice. Whether the notice, express or constructive, is sufficient, is generally a mixed question of law and fact to be submitted to the jury under instructions from the court; and if the evidence and every inference that can be drawn from it tend to establish the fact claimed, there can be no error in the submission of the question. The rule in regard to notice is substantially the same in cases of partnership and cases of agency. (Story on Agency, §§ 470, 471, 472, 473; Story on. Bail., § 208; Dunlap's Paley on Agency, 163, note 3; Story on Part., §§ 128, 129, 130, 160, 161, 335; 3 Kent's Com., 67; 2 Greenleaf's Ev., § 68 *a.*)

DANIELS, J.:

The claim for the recovery of which this action was brought, was for the price of goods sold and delivered by the plaintiffs, on the defendant's credit, in November and December, 1869. Before

July, 1867, the defendant carried on business at Great Bend, in Pennsylvania, where he resided, and at the same time he had a store at Meadville, in the same State, which was carried on in his name by his brother, H. S. Lenheim. The goods previously bought from the plaintiffs for this store had been purchased by this brother in the name and on the credit of the defendant, and with his anthority. In July, 1867, the store at Meadville was burned, but between $3,000 and $4,000 worth of the goods in it were saved. At that time there was owing to the plaintiffs for goods sold and delivered for that store the sum of about $8,000. Soon after the fire, and during the month in which it happened, William F. Dunn, who, at the time when the goods in controversy were sold, was connected with the plaintiffs in business, went for them to Meadville to collect the amount unpaid to them. His evidence upon the trial was, that when he arrived at that place he found the store building had been burned and some portion of the goods, and that "there was not any store running." He then went to Great Bend, where he met the defendant, who conceded his liability for the amount then unpaid and promised to pay it. Soon afterward attachments were issued against his property in New York for the recovery of the unpaid balance, and in a short time subsequent to that it was partially paid, and the residue satisfactorily adjusted and ultimately satisfied. No further sales were made for either of the stores at Meadville or Great Bend by the plaintiffs, until October, 1869, when a case of prints was sold for cash to the defendant himself for the store at Great Bend. In the following months of November and December, the goods were sold on the order of the defendant's brother for a store at Meadville, for the price of which the plaintiffs claim to recover in this action. It did not appear that he had in any way held his brother out as his agent, or as having any authority whatever to act for or bind him, after the destruction of the Meadville store by fire, or that he had been in any manner employed by him from that time. But it was shown by the defendant's own evidence as a witness, which was not in any manner controverted at the trial, that he revoked his brother's authority as soon as he had ascertained the state in which his affairs at Meadville was left by the fire.

The court at the trial left it to the jury to determine, whether

upon the facts shown, the plaintiffs were not in good faith bound to inquire into the authority of H. S. Lenheim to bind the defendant by further purchases in his name before they sold the goods in controversy. And on that point they must now be deemed to have found in the defendant's favor. The plaintiffs excepted to the submission of the question to the jury, as one on the determination of which the rights of the parties depended. It was not insisted that the question was not a proper one for their consideration, or that it should be decided by the court as matter of law; but the exception was to the direction that they should find for the defendant, if, in a fair dealing, the plaintiffs should have inquired whether the brother continued to have authority to buy goods in his name, or whether the business was continued by him. The proposition, in brief, was, that they should find for the defendant if the facts proved imposed the duty upon the plaintiffs to inquire concerning the continuation of the authority before they made any further sales. And to that the plaintiffs must be understood as intending to present their exceptions. In support of them, it was urged upon the argument that the mere knowledge of facts sufficient to indicate the necessity of inquiring whether the authority had not been terminated before the agent could be further safely trusted, was not enough to protect the principal from liability for the debt created without making it. And the authorities holding that the right to recover upon commercial paper cannot be defeated by circumstances of that nature, are relied upon as supporting this position. But that effect cannot properly be attributed to them. For they simply establish an exception in favor of the holder of such paper who has parted with value on the faith of the apparent unqualified right of the possessor to dispose of it. And it was created to promote the security of persons dealing in that kind of paper, having, in the uses to which it has been long devoted, some of the valuable characteristics of currency. It resulted from a long contest, attended with great uncertainty for a time, but finally ending in the conclusion now generally sustained, by which the title to commercial paper can only be impeached when it has been acquired for value from an apparent owner, by showing bad faith on the part of the person receiving it. ( *Welch* v. *Sage*, 47 N. Y., 143; *Goodman* v. *Simonds*, 20 How. [U. S.], 343.)

But even such a purchaser "must not willfully shut his eyes to the means of knowledge which he knows are at hand, for the reason that such conduct is equivalent to notice, and is plenary evidence of bad faith." (*Merchants' Bank* v. *State Bank*, 10 Wall., 604, 670, 671.) A different rule, not so stringent in its terms, has been very commonly applied to other transactions. That was clearly expressed by Baron ALDERSON, in deciding the case of *Whitbread* v. *Boulnois* (1 Younge & Coll. [Ex.], 303, 328), in the following terms: "When a party, having knowledge of such facts as would lead any honest man using ordinary caution to make further inquiries, does not make, but on the contrary studiously avoids making such obvious inquiries, he must be taken to have notice of those facts, which, if he had used such ordinary diligence, he would readily have ascertained." And its propriety and justice were fully maintained in the decision of *Williamson* v. *Brown* (15 N. Y., 354). This rule has been applied to protect retiring partners from liability for debts contracted to persons previously dealing with the firms of which they had been members. In *Barfoot* v. *Goodall* (3 Camp., 147), the omission of the name of Foster in the checks supplied by a banking firm to its customers, was held to be sufficient to impose the duty on the person using them to inquire whether he had not left the firm. And in *Zollar* v. *Janvrin* (47 N. H., 324), facts which would put the creditor on inquiry, were treated as equivalent to actual notice of a partner's retirement. *Deering* v. *Flanders* (49 N. H., 225); and *McIver* v. *Humble* (16 East, 169), also support this conclusion. All that the law requires to protect the retired partner is, that the creditor shall have knowledge of the fact before the debt has been incurred, and that may be as completely obtained from circumstances indicating its existence, as from direct and explicit notice. (*Hart* v. *Alexander*, 2 Mees. & Wels., 484; *Jeby* v. *Vining*, 2 McCord, 379; *Tudor* v. *White*, 27 Texas, 584–586.) And the principle is as applicable to the simple case of an agency as to that of a partnership, which, so far as it has been controlled and governed by means of it, involved only that of an agency. The power of one to bind another by his acts and contracts, may be as well extinguished by a constructive notice in the case of a mere agency as in the case of a partnership. The reason justifying the application of the rule in one case

equally requires it in the other. And it was properly applied to the case now before the court. There was no error in the proposition included in the charge, that the plaintiffs could not recover if the circumstances proved required them, in the exercise of good faith or fair dealing, to inquire whether the power of the agent continued, before they sold him goods on the supposition that he might still be authorized to charge his former principal by means of his purchase.

By the appeal from the order denying the motion for a new trial, the further question is presented, whether the facts proved created the duty to inquire, in order to protect the plaintiffs against the consequences of the revocation of the agent's authority. Aside from the evidence given by the defendant, there was nothing shown, precisely indicating what had been the powers of the agent, while he was employed in the store at Meadville, beyond the circumstance that he had the superintendence and management of the business then carried on. By whose act the place for the business was obtained, or what was the condition of the business when it was placed in the agent's charge, was not made to appear. The fact alone was shown that it was carried on in the defendant's name, and his brother had the charge of it. The defendant's evidence gave him no increased authority beyond that which may be implied from these circumstances. His statement was, that his brother "took the entire charge of the store, the purchase of the goods, and the selling of them; the store was carried on for his benefit, pretty much." "Prior to the fire, I authorized my brother to make purchases and carry on the store in my name." In this state of their affairs, his authority did not extend to the procurement of another store, and the commencement of the business anew. It was restricted to what he had been doing, and that was to carry on an existing business, which did not include the power to procure a new store and transfer the business to it. That was a step exceeding any thing he had either previously done, or had been employed to do, for the defendant. It was an event not contemplated by or provided for in his employment. To procure a new store and commence business in it, required the act or authority of the defendant. And the previous position and duties of the agent justified no one in supposing that

any such power had ever been given to him. He was in no way held out as possessing it. The rule upon this subject is, that " when the agency is to be inferred from the conduct of the principal, that conduct furnishes the only evidence of its extent as well as of its existence." And in solving all questions on this subject, the general rule is that the extent of the agent's authority is, as between the principal and third persons, to be measured by the usual employment of that person. (*Cox* v. *Hoffman*, 4 Dev. & Bat., 180, 181; *Humphrey* v. *Hawkins*, 12 Minn., 298.)

The event encountered by the destruction of the agent's place of business, was one which his apparent authority had left entirely unprovided for. The consequence was, that the business passed, by means of it, exclusively into the defendant's hands. And it was for him, and not for the agent, to say whether it should be continued by the opening of a new store. The work the agent was employed to do was completely suspended, and it could only be extended again by further authority, derived from the principal. The business of the agency ended by the destruction of the store in which it had been carried on. For he was only authorized to carry on that store in the defendant's name. That appeared from the authority he exercised and the duties he performed, as well as from the statements made by defendant as a witness. When that was destroyed, it extinguished the subject-matter of the agency. For the business could not be continued without either rebuilding, or procuring another store in some other place. And neither was within the province of this agent. And a knowledge of that fact was equivalent to notice that he could no longer bind his principal by further purchases, in the absence of some new grant of authority. (Story on Agency [4th ed.], § 499; 2 Kent [7th ed.], 824). This fact did not stand by itself in the present case. It was not only known to the plaintiffs, but, beyond that, they had closed their account with defendant by a suit and an attachment of his property, and afterward did no business with either himself or his brother, for a period of about two years. When the defendant's brother applied, in November, 1869, for further credit in the defendant's name, as reasonably prudent persons, they were required, at their peril, to ascertain, before they trusted him, that he had secured authority to render his contracts obligatory on the person whose name he used.

The presumption, from the other circumstances which had become fully known to them, was, that his authority had ended. And the court, at the trial, could have as well held so, as the Court of Appeals did, in the case of *Hoppock* v. *Moses* (43 How., 201), where it was decided that the creditor should have known that the power of the agent was extinguished when he entered into a partnership with another person.

The evidence was entirely sufficient to sustain the ruling of the court, and the verdict of the jury. The judgment and order appealed from should both be affirmed.

BRADY, J., concurred.

Judgment and order affirmed.