Peckham, J.
 

 The law may be regarded as settled, that a purchaser, for value advanced, of negotiable paper, including bonds, is not bound to exercise such care and caution as wary, prudent men would exercise. ¡Negligence will not impair his
 
 *147
 
 title. It is a question simply of good faith in the purchaser. Unless the evidence makes out a case upon which a jury would be authorized to find fraud or bad faith in the purchaser, it is the duty of the court to direct a verdict.
 
 (Belmont
 
 v. Hoge, 35 N. Y., 67;
 
 Birdsall
 
 v.
 
 Russell,
 
 29 id., 249;
 
 Goodman
 
 v.
 
 Simonds,
 
 20 How. U. S., 365;
 
 Murray
 
 v.
 
 Lardner,
 
 2 Wall., 121;
 
 Goodman
 
 v.
 
 Harvey,
 
 4 Ad. & El., 870.)
 

 These cases, cited by the appellant’s counsel, abundantly establish the doctrine.
 

 Notice of the defence to defeat a recovery, means substantially notice of such facts as would make a defence, or would necessarily lead the mind to believe in its existence, not merely notice of such facts as would put a prudent man upon inquiry.
 

 The rule, after considerable hesitation, and after full discussion and deliberation, has been thus settled in the interest of commerce. It puts the consequences of neglect or misfortune upon the party upon whom they have fallen; upon those who have negligently put such paper in circulation or from whom it is stolen. It sustains the ready and safe transfer of negotiable paper to those who honestly purchase it for value advanced.
 

 As to the facts which the defendant insists should have been submitted to the jury.
 

 After a careful reading of the whole evidence, I am entirely clear that no ease of bad faith was made against the plaintiff, unless the contents of the bonds themselves would impute it.
 

 The defendant examined the plaintiff
 
 de iene esse
 
 some two years prior to the trial, upon all the matters involved in the suit; thus affording him opportunity for contradiction or condemnation if the truth would warrant it. There was an entire failure to establish any substantial contradiction on the trial.
 

 The whole evidence tended strongly to establish the plaintiff’s good faith. He was a man of means. He invested and dealt in bonds, stocks, etc. Before purchasing or
 
 *148
 
 advancing upon these bonds, he ascertained their value from this defendant at the office of the company issuing the bonds. He took them directly after the purchase, for the purpose of selling, to the same person. If he had suspected the theft, the defendant was probably the last person to whom he would have offered them for sale.
 

 Then, as to the certificate accompanying or attached to the bond, does its absence give notice to the purchaser of the •theft of the bond, or of any other defect or defence ?
 

 This certificate constitutes no part of the bond. The bond .is entire and perfect without it.
 
 (Hodges
 
 v.
 
 Shuler,
 
 22 N. Y., 118.) The admission of the debt, and the promise to pay in the bond, are in no degree qualified by the certificate. The statement in regard to the certificate is simply
 
 cm addition
 
 to the bond; a promise to make the
 
 “
 
 scrip preferred stock attached to this bond,” full paid stock at a certain time “ upon surrender of the bond, and the unmatured interest warrants.”
 

 Thus the holder of the bond has the additional remedy of surrendering it up in exchange for the stock of the company instead of the money the bond secures to him. If it were conceded that the stock of the company is worth only fifty per cent, and that there is no probability of its increase in value during the life of the bond, of what value, intrinsic actual value is the certificate ? There is no proof in the ease that these certificates are of any value. It is testified that the bonds have no market value without the certificates, but the same witness says, that the bonds are good for their face. Obviously he only intended to testify that he never knew of their sale without the certificates.
 

 But if the bond is a legal, valid obligation without the certificate, and is good for its face, he certainly would not say that it was without value. The witness expressed the opinion that the bond was not negotiable without the certificate. In this he was mistaken.
 

 Suppose the bond provided that it might, upon surrender, be converted into notes of the late confederate government.
 
 *149
 
 No one would probably now regard that certificate as giving any additional value to the bond. No one would probably take much trouble to preserve that certificate. This certificate practically is usually a blank, and I believe, is not actually attached to the bond, but is kept with it.
 

 These bonds could have been easily made negotiable only upon the transfer of the certificates as well as of the bonds. Then the transfer of one without the other would pass no title.
 

 Under the facts of this case, the absence of the certificates would at most only put a reasonably careful man upon inquiry. It would not, of itself, prove a purchaser guilty of fraud or bad faith, although it would be a circumstance of some weight, and would require less other evidence to carry a case to the jury upon the question of bad faith.
 

 This would be so only as it might afford some evidence that the certificate had been detached for some dishonest purpose. In the absence of other facts, the evidence of such purpose would be very slight indeed. The face of the bond states the contents of the certificate and its use. It declares that the bond may be converted into full paid scrip preferred stock, “ upon the surrender of the bond and unmatured interest warrants.”
 

 If then upon looking at the market price of this preferred stock, he found it so low as to induce him to regard the convertible privilege as of no value, he might well conclude that the absent certificates were not in that respect material to his purchase. Having a legal and valuable bond without the valueless ©ertificate, he might well inquire no further.
 

 It would not be a legitimate inference that the purchaser would find in the certificate the true owner of the bond, when the bond itself made no such disclosure, nor gave any intimation that the certificate would afford any more light upon that point.
 

 Had the purchaser read this portion of the bond, and then inquired for the certificate, I do not see that it follows that he would have gained any knowledge that would have prevented
 
 *150
 
 a purchase or made a defence, so far as the case shows the certificates were of merely nominal value.
 

 Had he been told by Howry
 
 &
 
 Go. that there were no certificates attached when they took them, and the bonds were good without them, or that the certificates were of no value, and believing he had purchased, it would not have been evidence of fraud in the purchaser.
 

 There was sufficient proof of the value of the bonds. It was averred in the complaint, and not denied in the answer, and the actual value was proved by the defendant. In the absence of any proof, they are presumed to be worth then-face.
 

 The conversion was sufficiently proved.
 

 The suit in replevin, in which this plaintiff was made a defendant
 
 after
 
 the commencement of this suit, presented no defence to this action.
 

 The order appealed from is reversed, and the judgment of the Special Term upon the verdict affirmed, with costs.
 

 All concur.'
 

 Order reversed.