# ENOCH COMSTOCK *et al.*

*v.*

# JAMES S. HANNAH.

1. ASSIGNEE OF NOTE—*negligence in inquiring into consideration before purchase.* In a suit by the assignee before maturity, against the maker, upon a promissory note, where a failure of consideration was set up, averring that plaintiffs had notice of the same, the court modified one of the plaintiff's instructions, by adding the following: "unless the jury further believe that the consideration of the note in suit was for the sale of a patent planter, and the right to sell the same under conditions named in the evidence, and that the plaintiffs, or their agent, at the time of the purchase of the note, had notice of what the note was given for; and in that event it would be the duty of the plaintiffs to use a higher degree of diligence in informing themselves of the consideration of such note than would be required of them in purchasing ordinary commercial paper not connected with patent-right transactions:" *Held,* that the modification was clearly erroneous.

2. SAME—*effect of gross negligence in purchasing note before due.* Where a person takes any assignment of a promissory note for a valuable consideration, before due, and is not guilty of bad faith, even though he may be guilty of gross negligence, he will hold it by a title valid against the world, and it will not be subject to the defense of failure of consideration in his hands.

3. A party who takes commercial paper before due for a valuable consideration, without knowledge of any defect of title or defense to it, will take a good title unaffected by any defense going to its consideration. Suspicion of the defect of title, or knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the assignee at the time of the transfer, will not defeat his title, or let in a defense not otherwise admissible against it in his hands. That result can only be produced by bad faith on his part.

4. In a suit by an assignee of a note, taken before due, for a valuable consideration, without knowledge of any defense against the maker, it is error to instruct the jury that it was the duty of the plaintiff to exercise reasonable diligence and caution in the purchase of the note, to ascertain if any defense existed to it, and that if he was negligent in this respect, and took the same under circumstances that would have caused a reasonably prudent man to inquire about it, and be informed as to its character, then it makes no difference whether the note was assigned before or after due, and is subject to any defense that may have been proven.

5. Mere negligence on the part of an assignee of negotiable paper is not sufficient to deprive him of the character of a *bona fide* holder. There must be proof of bad faith. That alone will deprive him of that character.

APPEAL from the Circuit Court of Champaign county; the Hon. C. B. SMITH, Judge, presiding.

This was an action of assumpsit, brought by Enoch Comstock, Timothy H. Castle, Frederick Collins, Samuel H. Emory, Jr., Chauncey H. Castle, and Henry A. Castle, against James S. Hannah, upon a promissory note given by the defendant to Geo. W. Kenworthy, and by him assigned to the plaintiffs. The defendant pleaded both total and partial failure of consideration, and that plaintiffs had notice of the same when they bought the note. There was a verdict and judgment for the defendant, to reverse which the plaintiffs prosecute this appeal.

Messrs. CUNNINGHAM & WEBBER, for the appellants.

Mr. J. S. WOLFE, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action upon a promissory note, given by the defendant to one George W. Kenworthy, and by him assigned to the plaintiffs.

A verdict and judgment were rendered for the defendant in the court below, and plaintiffs appealed.

On the trial below, plaintiffs asked an instruction, which the court gave, with the following modification, plaintiffs excepting to the modification:

"Unless the jury further believe that the consideration of the note in suit was for the sale of a patent planter, and the right to sell the same under conditions named in the evidence, and that the plaintiffs or their agent, at the time of the purchase of the note, had notice of what the note was given for; and in that event it would be the duty of the plaintiffs to use a higher degree of diligence in informing themselves of the consideration of such note than would be required of them in purchasing ordinary commercial paper, not connected with patent-right transactions."

The following instructions were given for the defendant:

"The court instructs the jury that, in this case, it was the duty of the plaintiffs to employ reasonable diligence and caution in the purchase of the note in question, to ascertain if any defense existed to the note before they purchased the same.

"The court further instructs the jury, that a party purchasing a promissory note in good faith and before maturity, is bound to make such inquiries concerning it as a person of ordinary prudence would make in and about his ordinary business.

"If the jury believe from the evidence that the plaintiffs bought the note in question by their agent, and that at that

time said agent did not inquire for what consideration said note was given, and if they also believe, from the evidence, that, at the time, the defendant was a stranger to the said agent, and resided 150 miles from where said note was bought by the plaintiffs, then the jury may regard such omission to inquire into the character and consideration of said note as evidence tending to prove negligence on the part of the plaintiffs; and if they further find, from the evidence, that said note was made for the consideration stated in defendant's pleas, and that said consideration has failed, in whole or in part, and if they also find that plaintiffs were negligent in the purchase of said note, and took it under circumstances that would have caused a reasonably prudent man to inquire about it, and be informed as to its character, then, in that case, it makes no difference that the note was assigned before maturity, and the jury will find for the defendant to the extent of the failure of consideration proven, if any, if the jury also believe plaintiffs' agent failed to make such inquiry concerning the consideration of the note in suit, as a prudent man ought to have made under the circumstances."

The modification of plaintiffs' instruction, as above, and the giving of said instructions for defendant, are assigned as error.

The note was taken by plaintiffs for value before maturity, and duly assigned to them. No question is made in that respect.

All the evidence in the case tending in any way to affect plaintiffs with bad faith, notice, or to show circumstances of suspicion, was as follows: Plaintiffs, residing in Quincy, in this State, having a note for some $900 against Kenworthy, residing in Bushnell, Ill., and engaged in the manufacture of corn planters, instructed their agent to proceed to Bushnell and make a settlement of their claim against Kenworthy. The agent did so, and took the note in suit for $150, and five others of the same amount, and one for $75, in settlement of

the $900 note, surrendering that up, Kenworthy giving his due bill for a small balance.

The agent inquired of the bankers at Bushnell about the notes, and learned from them the notes were given to an agent of Kenworthy, for corn planters, and the right to sell corn planters.

The defense was, a failure of consideration, that the corn planter for which the note was given was worthless.

We know of no different rule of law, as applicable to citizens dealing in rights secured to them by letters patent from the United States, and to those citizens concerned in traffic in other species of property, which recognizes the former class of persons or their transactions as any more subject to the imputation of dishonesty and fraud than are the latter; and we think it error to lay down, as a matter of law, such a distinction as existing against the vendor of the subject of a patent-right. This the modification of plaintiffs' instruction virtually did, and we regard it as wrong. See *Goddard* v. *Lyman*, 14 Pick. 268.

Neither one of the above instructions given for the defendant do we regard as in accordance with the existing rule of law.

For a short period, commencing with the case of *Gill* v. *Cubitt*, 3 Barn. and Cresw. 466, decided in 1824, the doctrine did prevail in the English law, which would have afforded countenance to the third above instruction for the defendant, so far as respects taking the note under suspicious circumstances. It was established in that case, that the purchaser of negotiable paper for value, before maturity, was not entitled to the privileges which belong to a *bona fide* holder, when he took the paper under circumstances which ought to have excited the suspicion of a prudent and careful man. But that case was distinctly overruled in the same tribunal where it was decided, in *Goodman* v. *Harvey*, 4 Ad. and Ell. 870.

Lord Denman there, in delivering judgment, said : "I believe we are all of opinion that gross negligence only would

not be a sufficient answer where the party has given a consideration for the bill. Gross negligence may be evidence of *mala fides*, but it is not the same thing. We have shaken off the last remnant of the contrary doctrine. Where the bill has passed to the plaintiff, without any proof of bad faith in him, there is no objection to his title." This decision was in 1836, and the rule established in this case has ever since, as we understand, obtained in the English courts.

In *Goodman* v. *Simonds*, 20 How. 343, the doctrine of the case of *Goodman* v. *Harvey* is approved and sanctioned by the Supreme Court of the United States, where the subject was elaborately examined, and see the authorities there cited. *Murray* v. *Lardner*, 2 Wall. 110, is to the same effect.

In the latter case, speaking of the former one of *Goodman* v. *Simonds*, it is said : "That case affirms the following propositions : The party who takes it (commercial paper) before due, for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by a title valid against the world. Suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the transfer, will not defeat his title. That result can only be produced by bad faith on his part. The burden of proof lies on the person who assails the right claimed by the party in possession. Such is the settled law of this court, and we feel no disposition to depart from it."

The same rule is held by the Court of Appeals of the State of New York, in *Magee* v. *Badger et al.* 34 N. Y. 247, where the court say, that the duty of active inquiry does not rest on the purchaser of commercial paper, to avert the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence. And see *Welch* v. *Sage*, 47 N. Y. 143; *Seybel* v. *National Currency Bank*, 54 id. 288 ; *Chapman* v. *Rose*, 56 id. 137. In the latter case, upon this subject, the court say: "It is now, however,

the settled law, that mere negligence, however gross, is not sufficient to deprive a party of the character of a *bona fide* holder. There must be proof of bad faith. That alone will deprive him of that character." See also 1 Pars. Notes and Bills, 258.

We accept the doctrine of these cases as correct in principle, and the one sustained by the great weight of authority.

There may be found some decisions of this court, as in *Russell* v. *Hadduck,* 3 Gilm. 233, and other cases, where there has been a seeming recognition of the opposite doctrine, as asserted in the instructions, at least to the extent that a purchaser of negotiable paper, with knowledge of any facts and circumstances which would excite the suspicion of a prudent and careful man, is bound to make inquiry, and in neglect thereof will take the paper subject to any equities which may exist between the previous parties to it.

But there never has been more than an incidental assumption, without discussion, that such was the rule. It has never been presented before the court as a subject of question, and as such discussed or considered, and a direct adjudication made thereon.

We find nothing in previous decisions which should conclude us from adopting what, upon investigation, we are satisfied is the correct doctrine in principle, and the prevailing rule of law.

The judgment will be reversed, and the cause remanded.

*Judgment reversed.*