## S. W. Lampson et al. v. Illinois Trust and Savings Bank.

1. NEGOTIABLE PAPER—*Bona Fide Holders*—*Negligence.*—Mere negligence, however gross, is not sufficient to deprive a party of the character of a *bona fide* holder of negotiable paper. There must be proof of bad faith.

Assumpsit.—Money had and received. Appeal from the Circuit Court of Cook County; the Hon. EDMUND W. BURKE, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed February 11, 1896.

### STATEMENT OF THE CASE.

This is an action of assumpsit on the common counts to recover from the defendants, money had and received.

The appellants, Lampson Bros. & Co., during the year 1891, and prior thereto, had been doing banking with the appellee, The Illinois Trust and Savings Bank, and in the course of that business on August 17, 1891, there was made up in the office of appellants a deposit slip or memoranda covering items aggregating $94,017.53. These items consisted of currency, checks, and a draft for $10,000 drawn by Lampson Bros. & Co. on the Bank of New York and made payable to J. S. Gibbs, cashier of the said Illinois Trust and Savings Bank, and were intrusted to Charles Smith, a clerk, then in the employ of Lampson Bros. & Co., who was sent to the bank to deposit the same, but instead of doing this he abstracted the $10,000 draft and obtained in exchange for it a draft of the Illinois Trust and Savings Bank on New York for a like amount payable to the fictitious name of W. H. Martin. This draft he turned over to one Robert E. Whittaker, who forged the indorsement W. H. Martin, and through the assistance of one W. H. Hagedon, obtained the money on the same and appropriated it to his own use.

A jury was waived. The court found the issues for the defendants and the plaintiffs appeal to this court.

D. M. KIRTON, attorney for appellants, contended that Smith, as the agent of appellants, had no authority to bind his principal. The general rule is that a purchaser of property takes only such title as his seller has and is authorized to transfer; he acquires such interest as the seller has and no greater or other. *Nemo plus juris ad alium transferre potest quam ipse habet* is the maxim of the law. Mechem on Agency, Sec. 784.

If the agent has no authority to transfer the title he can, as a rule, confer none upon his transfer. Wherever therefore the agent has without authority of his principal, sold, assigned, transferred or disposed of the principal's property to a third person, the principal may recover either the property or its value. Berthol v. Quinlan, 68 Ill. 297; McGoldrich v. Willits, 52 N. Y. 612; Saltus v. Everett, 22 Wend. 366; Drovers Bank v. O'Hare, 18 Brad. 182.

Possession of the agent is not evidence of right to dispose of. Mechem, Sec. 786; Covill v. Hill, 4 Denio 323; Ballard v. Burgett, 40 N. Y. 314; Neil v. Tenth Nat. Bank, 46 N. Y. 320.

A person who deals with an agent is bound to inquire into his authority, and ignorance of the agent's authority is no excuse. The principal may be careless in reposing confidence in his agent, yet this does not make him liable to a third party, who, in dealing with such agent, fails to exercise the diligence usual with good business men under the circumstances. If there is anything likely to put a reasonable business man upon his guard as to the authority of the agent it is the duty of the third party to inquire how far the agent's acts are in pursuance of the principal's limitations. Hurley v. Watson (Mich.), 13 West Rep. 543. See also Dozier v. Freeman, 47 Miss. 647.

PRUSSING & McCULLOCH, attorneys for appellee, contended that by virtue of his employment as cashier, appellee was warranted in assuming Smith to be invested with the usual powers and authority of a cashier.

By far the largest portion of incidental powers is deduced from the particular business, employment or character of

the agents themselves. Whatever acts are usually done by such classes of agents, whatever rights are usually exercised by them, and whatever duties are usually attached to them, all such acts, rights and duties are deemed to be incidents of the authority confided to them in their particular business, employment or character. Story on Agency (Ninth Ed.), Sec. 106.

In either case (whether the agency is general or special) the question of the authority of the agent must depend, so far as it involves the rights of third persons who have relied thereon, upon the character bestowed, and not upon the instructions given. Or, in other words, the principal is bound to third persons who have relied thereon in good faith, and in ignorance of any limitations or restrictions by the apparent authority he has given to the agent, and not by the actual or express authority where that differs from the apparent, and this, too, whether the agency be a general or a special one. Mechem on Agency, Sec. 283.

Mr. Presiding Justice Gary delivered the opinion of the Court.

The appellants were heavy dealers as grain and commission merchants, keeping an account with the appellee. Charles Smith was cashier of the appellants, "ran the cash, kept track of the cash items, and made up the deposits," as the abstract says. August 17, 1891, he went to the bank with funds to the amount of $94,017.53, among which was a $10,000 draft on New York by the appellants to the order of the cashier of the bank, which draft he did not deposit, but obtained for it from the bank its draft on New York for the same amount, to the order of W. H. Martin—a fictitious payee.

Both drafts were paid, so that as the transactions now stand the appellants have lost $10,000, but the bank has neither gained nor lost. If in fact the appellants had wanted from the bank a draft on New York, to the order of Martin, the business of obtaining it would have been quite as likely to be attended to by Smith, as by any person. It

is unusual, but not extraordinary, that "merchants will require bank drafts in preference to their own, in sending out of town around." (Quoted from testimony in record.)

The transaction was so much out of the common run, that the exchange clerk did confer with the third vice-president of the bank about exchanging the drafts, and he authorized the exchange. There is also contradictory testimony whether, on the same day after the exchange, the president of the bank and one of the appellants conversed as to the opportunity the appellants were giving Smith to defraud.

Now, the question is, did the bank get a good title to the draft by appellants, as *bona fide* purchasers? for if it did, then what became of the draft by the bank, is immaterial. The appellants are suing for the proceeds of the draft made by themselves.

In Comstock v. Hannah, 76 Ill. 530, the Supreme Court adopts, from the New York Court of Appeals, the proposition that " it is now, however, the settled law, that mere negligence, however gross, is not sufficient to deprive a party of the character of a *bona fide* holder. There must be proof of bad faith."

That case is approved in Shreeves v. Allen, 79 Ill. 553, and followed, without alluding to it, in Murray v. Beckwith, 81 Ill. 43.

The appellants say that the " case turns upon the question as to whether or not the circumstances were such as should have aroused, or, in fact, did arouse, the bank's suspicions that Smith was misappropriating " the draft by appellants. But in the case cited from 76 Ill., the rule is held to be that "suspicion of defect of title, or the knowledge of circumstances which would excite suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the transfer, will not defeat his title."

The appellants do not—can not fairly—contend that the bank acted in bad faith in exchanging drafts.

The judgment is affirmed.