## Nicholas Mann v. Merchants' Loan and Trust Co. et al.

1. ASSIGNMENT—*Of Notes Secured by Mortgage.*—The assignment of a note secured by a mortgage carries the security with it.

2. NEGOTIABLE INSTRUMENTS—*Assignability Under the Law Merchant and in Illinois.*—Negotiable instruments under the law merchant and in Illinois, by force of the statute have an assignability, by virtue of which latent defenses of the maker or former holders may be cut off.

3. SAME—*Notes Indorsed in Blank.*—In Illinois, under the statute, a negotiable note indorsed in blank passes by the mere delivery of it.

4. SAME—*Assignee of Notes Secured by a Trust Deed.*—It is a settled law in Illinois that a *bona fide* assignee of a note secured by mortgage acquires the mortgage security, subject only to the equities of the mortgagor and not to the latent equities of other parties of which he has no notice.

5. SAME—*When Fraud is a Defense Against a Bona Fide Holder for Value.*—Under the statute of Illinois a fraud used in the obtaining of the making or executing of a promissory note, will constitute a defense to such note against a *bona fide* holder, but the fraud must have been such that the party was deceived as to the effect of his act.

6. SAME—*Innocent Holder of Stolen Notes.*—The innocent holder for value, of negotiable paper, indorsed before maturity, is protected under the rules of the common law, although the note may have been stolen, or otherwise wrongfully put into circulation. To favor commerce, the law makes an exception as to negotiable paper and permits a *bona fide* indorsee to acquire title from a person who had none himself.

7. SAME—*Suspicions of Defect in Title.*—A person who takes commercial paper before maturity, for a valuable consideration, without knowledge of any defect in title and in good faith. will hold it by a title valid against the world. Suspicion of a defect in the title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence, will not invalidate his title; such a result can only be produced by bad faith on the part of the taker.

8. SAME—*Presumptions Where an Indorsement is Without Date.*— Where an indorsement on a promissory note is without date, the presumption of law is, that such indorsement was made before the note

Mann v. Merchants' Loan & Trust Co.

became due, and the maker can only show in such a case, to defeat a recovery, that the original execution of the note was obtained by fraud and circumvention.

9. SAME—*Possession Prima Facie Evidence of Title.*—Possession of negotiable paper indorsed in blank is *prima facie* evidence of title, and the holder of such paper is presumed to have taken it in good faith, for value, before maturity, in the usual course of business and without notice.

10. SAME—*Notes Tainted with Fraud and Other Infirmities.*—When a note is tainted with fraud or other infirmity and passes into the hands of an innocent purchaser, not chargeable with notice, and for a valuable consideration, he acquires it purged of such fraud and infirmities, and other persons acquiring it of him succeed to his rights in the same condition. A defense to such note in the hands of the original holder having been thus cut off, is not revived by the note being again transferred.

11. FRAUD—*Where One of Two Innocent Parties Must Suffer.*— Where one of two innocent parties must suffer a loss by reason of a fraudulent act committed by a third party, the loss must fall upon the one who placed in such party's possession the means by which he was enabled to perpetrate the fraud.

**Bill to Foreclose a Trust Deed.**—Appeal from the Superior Court of Cook County; the Hon. EDMUND W. BURKE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Affirmed. Opinion filed February 21, 1902.

This suit was brought by the Merchants' Loan and Trust Company to foreclose a trust deed securing a loan for $5,000, dated May 12, 1892, due five years after date, and signed by John Picalek. Shortly after the note was executed and delivered it was purchased by Nicholas Mann from Theodore H. Schintz, who made the loan originally to Picalek; Mann, who paid $5,000 for the note, kept it in his possession until a few days before it became due, when he took it to Schintz, and handed it to him for collection only. The note at the time it had been sold by Schintz to Mann bore the following indorsement: "Pay to the order of.......... John Picalek." The note was in the same condition when handed back to Schintz by Mann. Immediately after the note was given to Schintz by Mann, Schintz took it to the Merchants' Loan and Trust Company Bank and there hypothecated it as part security for a large loan which he had made at this bank.

The bank brought suit to foreclose the trust deed, claiming to be the legal owner and holder of the note. Mann defended and filed a cross-bill to foreclose the same trust deed, claiming to be the real owner of the note. The contest here is between Mann, on the one hand, and the Merchants' Loan and Trust Company on the other.

It is not claimed that Schintz had any interest in or title to the note when he took it to the bank and hypothecated it, nor is it claimed that he had any actual or implied authority from Mann to so deal with the note. The bank claims the title to the note and the right to foreclose the trust deed solely upon the principle that having acquired the note before maturity in the ordinary course of business, without notice of the ownership of Mann, it has a good title to the note, and is therefore entitled to foreclose the trust deed.

LACKNER, BUTZ & MILLER, attorneys for appellant.

BURLEY & McSURELY, attorneys for appellee.

MR. JUSTICE WATERMAN delivered the opinion of the court.

While the bill and cross-bill are each for the foreclosure of the same mortgage, no question as to the proper assignment of a mortgage or notice to a mortgagor, by a transferee, that he holds the same, arises, as each of the complainants claim rights under the mortgage by virtue of the respective claims to the ownership of the notes secured thereby.

The assignment of a note secured by mortgage carries the security with it. Pardee v. Lindley, 31 Ill. 174; Hamilton v. Lubukee, 57 Ill. 415–419; Keohane v. Smith, 97 Ill. 156; Mullanphy Savings Bank v. Schott, 135 Ill. 655; Curtis v. Humble, 57 Ill. App. 513; Humble v. Curtis, 160 Ill. 193.

Negotiable instruments under the law merchant and in Illinois by force of the statute have an assignability by virtue of which latent defenses of the maker or former

holders may be cut off. The statute of this State, sections 3, 4, 7, and a portion of 10, chapter 98, is as follows:

EFFECT OF NOTES, ETC. § 3. All promissory notes, bonds, due bills and other instruments in writing, made or to be made, by any person, body politic or corporate, whereby such person promises or agrees to pay any sum of money or articles of personal property, or any sum of money in personal property, or acknowledges any sum of money or article in personal property to be due to any other person, shall be taken to be due and payable, and the sum of money or article of personal property therein mentioned shall, by virtue thereof, be due and payable as therein expressed.

NOTES, ETC., ASSIGNABLE BY INDORSEMENT. § 4. Any such note, bond, bill or other instrument in writing, made payable to any person named as payee therein, shall be assignable, by indorsement thereon, under the hand of such person, and of his assignees, in the same manner as bills of exchange are, so as absolutely to transfer and vest the property thereof in each and every assignee successively.

RIGHTS OF HOLDERS—LIABILITY OF ASSIGNOR. § 7. The rights of lawful holders of promissory notes payable in money and the liability of all parties to or upon said notes shall be the same as that of like parties to inland bills of exchange according to the custom of merchants.

FRAUD. § 10. If any fraud or circumvention be used in obtaining the making or executing of any of the instruments aforesaid, such fraud or circumvention may be pleaded in bar to any action to be brought on any such instrument so obtained, whether such action be brought by the party committing such fraud or circumvention, or any assignee of such instrument.

In this State, notes indorsed in blank pass by mere delivery. Morris, Adm'x, v. Preston et al., 93 Ill. 215–221; Palmer v. Marshall, 60 Ill. 289–292; Wilder v. DeWolf, 24 Ill. 190.

It has long been the settled law in Illinois that the *bona fide* assignee of notes secured by trust deed thereby acquires the security, subject, only, to equities of the mortgagor and not subject to latent equities of other parties of which he has no notice. Olds v. Cummings, 31 Ill. 188–194; Shreeves v. Allen, 79 Ill. 553–555; Silverman v. Bullock, 98 Ill. 11; Mullanphy Savings Bank v. Schott, 135 Ill.

655; Himod v. Gilman, 147 Ill. 293–301; Humble v. Curtis, 160 Ill. 193. See also Murry v. Lyburn, 2 John. Ch. 441.

Our attention is called to the following excerpt from the 2d Edition of the Am. & Eng. Enc. of Law, Vol. 4, p. 321:

"When it has been shown that a negotiable instrument was stolen from or lost by the true owner, tainted in its inception with illegality or fraud, obtained from the maker by fraud or duress, or put into circulation fraudulently, the presumptions in favor of the holder's title are overcome and it devolves upon him to show that he is a *bona fide* holder for value; that is, he must show that he or some prior holder, took the paper in good faith, for value, without notice, before maturity, and in the usual course of business."

The principle thus enunciated, it is insisted, is decisive of this case. The statement, evidently, covers only things done prior to or connected with the origin of the negotiable instrument, such as the creation of it and the first putting into circulation; the author indicates that the last holder may rely upon the fact that some "prior holder took the paper in good faith, for value, without notice, before maturity, and in the usual course of business." In the present case appellee claims that Mann, a prior holder, took the paper under all these conditions, and appellant, Mann, also so insists.

Carefully read, and not extended by implication, the excerpt is in accordance with the law of Illinois. Hodson v. Eugene Glass Co., 156 Ill. 397, the only Illinois case cited in support thereof, is not in point. The court in that case found that the note was obtained from the maker by fraud; the Circuit Court not only found this, but that the holder was not a *bona fide* holder for value. 156 Ill. 400; 58 Ill. App. 248–249. Moreover, the bill in that case was filed by the nominal maker of the note and mortgage to enjoin the foreclosure of the mortgage and the collection or assignment of the note.

Appellant also calls our attention to Charles v. Remick, 156 Ill. 327, and to Wright v. Brosseau, 73 Ill. 381. The case of Charles v. Remick was a suit upon a note made by one Goldthwaite, he, after he had ceased to be a member

of the firm of "Ward, Goldthwaite & Co.," signing such firm name and thereby apparently creating its note, Remick, a partner in such firm, being sued, successfully defended by showing the fraudulent issue of the note.  156 Ill. 329; 54 Ill. App. 117.

Wright v. Brosseau arose out of a note wrongfully made by a partner in fraud of the firm.   Such fact being shown, the burden, it is said, was thrown upon the indorsee (plaintiff) of showing that "he received the note in the usual course of business and for value" and "that he was a *bona fide* indorsee for value without notice of the fraud."

In the present case it is undisputed that Schintz in the first instance obtained the note *bona fide* for value; that he sold it to Mann in the same way.   The maker of the note does not dispute the validity of either note or mortgage. The contest here is between a party, once a *bona fide* holder for value, who voluntarily gave possession of note and mortgage to Schintz for value before maturity, and a party who, *bona fide* for value, before maturity, received the note and mortgage from Schintz and still holds the same.

The question is not at all as to the assignability of a mortgage.   The ownership of the note carries with it the security; it will hardly be contended that appellant is entitled to foreclose the mortgage and receive the benefit thereof while appellee may recover judgment on the note.

It has repeatedly been held that under the statute of this State it is a fraud used in obtaining the making or executing of a promissory note, that will constitute a defense thereto against a *bona fide* holder for value; the fraud must have been such that the party was deceived as to the effect of his act.   Wood v. Hynes, 1 Scam. 103; Mulford v. Shepard, 1 Scam. 583; Adams v. Wooldridge, 3 Scam. 255–257; Easter v. Minard, 26 Ill. 495–496; Latham v. Smith, 45 Ill. 25–27; Shipley v. Carroll, 45 Ill. 285–287; Depuy v. Schuyler, 45 Ill. 306–307; Elliott v. Levings, 54 Ill. 213–214; Culver v. Hide & Leather Bank, 78 Ill. 625–626; Richelieu Hotel Co. v. Mil. Encampment Co., 140 Ill. 248–258; Hendrix v. The People, 9 Ill. App. 42; Sir John Lawson et al. v.

Weston et al., 4 Espinasse, 56, was an action brought to recover the amount of a country bill of exchange for £500, drawn by one Vazie, in favor of Stokoe, at fifty days, on the defendants, and accepted by them.

The plaintiffs were the members of the Richmond Bank, in Yorkshire, where they resided. They had discounted the bill in the usual course of their business, at Richmond, for a person who brought it to their shop, but who was unknown to them.

The bill had been regularly indorsed by Stokoe, to a person of the name of Shears, who had also put his name on it. Shears lost it or it was stolen from him; but it was proved that he had advertised it immediately on its being lost.

The names of Stokoe and Shears were on the back of the bill; and on its being discounted, the person who discounted, was desired to put his name on it; he put the name of John Warren on it, and no further inquiry was made by the plaintiffs, who paid him the amount, deducting the discount.

The attorney-general stated the grounds upon which the payment of the bill was resisted. That Shears had advertised it, and so given notice to have it stopped in payment; that though a person might pay a bill to which he was a party, to one who had come dishonestly by it, by reason of the personal liability attached to his name on the bill, a banker, or any other, should not discount a bill for a person unknown, without using diligence to inquire into the circumstances, as well respecting the bill as of the person who offered to discount it; that it was the usual course of the banking trade, which he was prepared with evidence to show, that where a bill of the amount of the present was offered for discount, never to do it, without making such inquiries; and that he would call several bankers to prove to that effect.

Lord Kenyon said:

" I think the point in this case has been settled by the case of Miller v. Race, Burrows, 452.

If there was any fraud in the transaction, or if a *bona fide* consideration had not been paid for the bill by the plaint-

iffs, to be sure they could not recover; but to adopt the principle of the defense to the full extent stated, would at once paralyze the circulation of all the paper in the country and with it all its commerce. The circumstances of the bill having been lost might have been material, if they could bring knowledge of that fact home to the plaintiffs. The plaintiffs might, or might not, have seen the advertisement, and it would be going a great length to say that a banker was bound to make inquiry concerning every bill brought to him for discount. It would apply as well to a bill for ten pounds as for 10,000 pounds."

In Shipley v. Carroll, 45 Ill. 285, in passing upon the following plea—" And for a further plea in this behalf, defendant, Elizabeth Carroll, says, *actio non*, because, she says, that the sole cause of action for which the suit is brought is the promissory note in the first count of plaintiff's declaration mentioned; and defendant avers that the said note was written and signed by her simply and solely as a matter of amusement, and in the presence of said Philip Foley, without any design of delivering the same to the said Foley; and defendant avers that said Foley feloniously did steal, take and carry away the said note, from the possession of the said defendant; and defendant avers that the said Philip Foley never was the legal holder or owner of said note, and this she is ready to verify," etc.—the court said:

" Section 10 of the statute concerning negotiable instruments, is: ' If any fraud or circumvention be used in obtaining the making or executing of any of the instruments aforesaid, such fraud or circumvention may be pleaded in bar to any action to be brought on such instrument so obtained, whether such action be brought by the party committing such fraud or circumvention, or any assignee or assignees of such instrument.'

This note being of the class of instruments embraced in this section, the question is presented whether the fraud alleged in this plea is of the character contemplated by the statute.

Under this section of our statute it has been repeatedly held that the fraud must relate to the execution of the instrument itself, and not to the consideration; that a false representation as to the amount or other terms of the instrument, or of its nature and character, was what was

intended to be embraced. Wood v. Hays, 1 Scam. 103; Mulford v. Shepard, Id. 583; Adams v. Woodbridge, 3 Id. 255; Easter v. Minard, 26 Ill. 494. Does the stealing of a note filled up and signed by a person, and not delivered to any one and not intended to be, fall within the fraud or circumvention in the obtension of the note?

The doctrine is firmly, and we believe, uniformly settled, that the innocent holder, for value, of negotiable paper indorsed before its maturity, is protected under the rules of the common law, although the instrument may have been stolen or otherwise wrongfully put into circulation. To favor commerce, the law makes an exception as to negotiable paper, and permits the *bona fide* indorsee to acquire title even from a person who had none himself. Independent of our statute, there can be no doubt, that, in this case, plaintiff would, by the assignment of the note before its maturity, have acquired the title, as the demurrer admits that he paid value and had no notice of the defense which existed to the instrument.

In the case of Jones v. Nellis, 41 Ill. 482, it was held that a treasury note of the United States, which had been stolen from the true owner and sold to an innocent purchaser, passed the title, although the thief had none; the instrument being negotiable by delivery, a purchaser for value in the usual course of trade must be protected; that he was not bound to inquire as to title in the absence of circumstances calculated to create suspicion. And it will be found that the authorities apply the same rule to paper negotiable by indorsement."

" In this case, no false or fraudulent representations were made as to amount, date, or other material part of the note. The maker obviously intended to sign such a note as this was, and she knew its contents when she signed the instrument. The act was voluntary and fully intended. No art or device was employed to induce the act. Neither deceit, misrepresentation nor fraud was employed to induce the maker to sign her name to the instrument. How, then, can we say that the making of the note was obtained by fraud? The possession of the note, after it was made and executed, is admitted by the demurrer to have been by stealth, which, no doubt, embraced fraud; but that did not relate to its execution, and it is only that class of cases which is embraced in the statute. This case does not materially differ from any other note or bank bill which may be stolen and negotiated after it has been made. And we have seen that innocent purchasers of such instruments are protected, and

the same rule must apply where notes are put into circulation, or are made and get into circulation, as this did.

The plea, therefore, presented no defense to a recovery in this case, and the demurrer should have been sustained to it; and for the error of the court below in overruling it, the judgment must be reversed and the cause remanded."

In Comstock v. Hannah, 76 Ill. 530, the Supreme Court, in speaking of Goodman v. Harvey, 4 Ad. and Eld., said:

"Lord Denman there, in delivering judgment, said: 'I believe we are all of opinion that gross negligence only would not be a sufficient answer where the party has given a consideration for the bill. Gross negligence may be evidence of *mala fides*, but it is not the same thing. We have shaken off the last remnant of the contrary doctrine. Where the bill has passed to the plaintiff, without any proof of bad faith in him, there is no objection to his title.' This decision was in 1836, and the rule established in this case has ever since, as we understand, obtained in the English courts.

In Goodman v. Simonds, 20 How. 343, the doctrine of the case of Goodman v. Harvey is approved and sanctioned by the Supreme Court of the United States, where the subject was elaborately examined, and see the authorities there cited. Murray v. Lardner, 2 Wall. 110, is to the same effect.

In the latter case, speaking of the former one of Goodman v. Simonds it is said: 'The case affirms the following propositions: The party who takes it (commercial paper) before due, for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by a title valid against the world. Suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker at the time of the transfer, will not defeat his title. That result can only be produced by bad faith on his part. The burden of proof lies on the person who assails the right claimed by the party in possession.' Such is the settled law of this court, and we feel no disposition to depart from it.

The same rule is held by the Court of Appeals of the State of New York, in Magee v. Badger et al., 34 N. Y. 247, where the court say that the duty of active inquiry does not rest on the purchaser of commercial paper, to avert the imputation of bad faith. The rights of the holder are

to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence. And see Welch v. Sage, 47 N. Y. 143; Seybel v. National Currency Bank, 54 Id. 288; Chapman v. Rose, 56 Id. 137. In the latter case, upon this subject, the court say: 'It is now, however, the settled law that mere negligence, however gross, is not sufficient to deprive a party of the character of a *bona fide* holder. There must be proof of bad faith. That alone will deprive him of that character.' See also 1 Pars. Notes and Bills, 258.

We accept the doctrine of these cases as correct in principle and the one sustained by the one great weight of authority.

There may be found some decisions of this court, as in Russell v. Hadduck, 3 Gilm. 233, and other cases, where there has been a seeming recognition of the opposite doctrine, as asserted in the instructions, at least to the extent that a purchaser of negotiable paper, with knowledge of any facts and circumstances which would excite the suspicion of a prudent and careful man, is bound to make inquiry, and in neglect thereof will take the paper subject to any equities which may exist between the previous parties to it.

But there never has been more than an incidental assumption, without discussion, that such was the rule. It has never been presented before the court as a subject of question; and as such discussed or considered, and a direct adjudication made thereon.

We find nothing in previous decisions which should conclude us from adopting what, upon investigation, we are satisfied is the correct doctrine in principle, and the prevailing rule of law."

In Shreeves v. Allen, 79 Ill. 553, the rule as to negotiable instruments enunciated in Comstock v. Hannah was referred to with approbation. In Daniel on Negotiable Instruments it is said:

"Section 817. In England it has been held that where the drawer of a bill, which he indorsed in blank, delivered it to W. to get it discounted for him, and W. went off with the bill, promising to get and bring him the money, but never returned with the bill or the money, and the drawer never heard of the bill until called upon by H. to pay it, it was held that H. must prove that he gave value in order to recover on the bill.

Section 818. It is observed, however, that the fraud which shifts the burden of proof upon the holder of the note, and renders it necessary for him to establish *bona fide* ownership for value, must be a fraud committed upon the maker; and fraud against the payee or any intermediate holder is insufficient.

Section 819. Fourth. That when the holder responds by showing that he did acquire the instrument *bona fide*, for value, in the usual course of business, while it was current, and under circumstances which do not operate as constructive notice of the facts which impeach the original validity, the defendant must prove that he had actual notice of such facts; otherwise the holder's right to a recovery against him is perfected. This principle is obviously correct, for to require the plaintiff to show absolutely that he had no knowledge of facts would be to burden him with the necessity of proving an impossible negative."

Randolph on Commercial Paper, 1st Ed. 1886, Sec. 1026, says :

" Evidence of illegality or fraud in the origin or transfer of the paper throws on the holder the burden of proving his good faith. And if the holders are partners, the good faith of all must be shown."

He cites for this no Illinois decisions. The Supreme Court of this State, as we have seen, has for many years held otherwise.

Neither the fact that the instrument was what is known as a judgment note, nor that it was secured by mortgage, nor that it could be declared due on failure to pay interest, impaired its negotiability. Chicago Railway Equipment Company v. Merchants' Bank, 136 U. S. 268; White v. Smith, 77 Ill. 351; Richards v. Barlow, 140 Mass. 218; Gehlback v. Carlinville National Bank, 83 Ill. App. 129.

In Depuy v. Schuyler, 45 Ill. 307, the court said :

" It is unnecessary to discuss the questions made on this record, as the established doctrine of this State as to negotiable paper is, that the indorsee of a note, in the absence of proof to the contrary, is presumed to have taken it in the due course of trade, and before maturity, for value, and *bona fide*. A person questioning the firmness of the transaction, to defeat a recovery, must prove that it was not for value, or that it was made for a fraudulent purpose.

Wightman v. Hart, 37 Ill. 123; Mulford v. Shepard, 1 Scam. 583.

The indorsement in this case being without date, the presumption of law is that it was made before the note became due, and the maker can only show, in such case, to defeat a recovery, that the original execution of the note was obtained by fraud and circumvention (Mobley v. Ryan, 14 Ill. 51), and what constitutes this fraud and circumvention is explained in this court in Woods v. Hynes, 1 Scam. 103, and Mulford v. Shepard, *supra*. It must consist in obtaining the making or executing the note, not in relation to the consideration. Adams v. Wooldridge, 3 Scam. 255; Ester v. Minard, 26 Ill. 494."

Possession of a negotiable note indorsed in blank is *prima facie* evidence of title, and the holder of such instrument is presumed to have taken it in good faith, for value, before maturity, in the usual course of business and without notice. Fourth Am. & Eng. Ency. of Law, 2d Ed., 318; Cisne v. Chidester, 85 Ill. 523–524; Cook v. Norwood, 106 Ill. 558–562; Bemis v. Horner, 165 Ill. 347–352–353; Same v. Same, 62 Ill. App. 38; Comstock v. Hannah, 76 Ill. 530; Matson v. Ally, 141 Ill. 284–287; 1st Smith's Leading Cases, 780; Metcalf, Receiver, v. Draper, 98 Ill. App. 399.

In Woodworth et al. v. Huntoon et al., 40 Ill. 131–137, the court said:

" A note tainted with fraud or other infirmity, passing into the hands of an innocent purchaser, not chargeable with notice, and for a valuable consideration, he acquires it purged of the defense, and any other person acquiring it of him succeeds to his rights in the same condition he held them. A defense to the instrument in the hands of the original holder, having been thus cut off, is not revived by the note being again transferred.

The assignment of this note to Mary P. Huntoon was before its maturity. This raises the presumption, until it is rebutted, that she received it without notice, and in the due course of business. It then devolves upon the party contesting the good faith of the transaction to show that she had notice of the usury, or of such circumstances as would lead to notice, at the time she purchased."

Directly after the excerpt from the Am. and Eng. Ency. of Law, before mentioned, are the following texts:

" BURDEN SHIFTED TO DEFENDANT TO SHOW NOTICE OF SPECIFIC INVALIDITY.—Where the holder has restored his *prima facie* case, by introducing evidence from which it appears that he took the instrument *bona fide* for value, the burden is then shifted to the defendant to prove the holder's notice or knowledge of the specific facts invalidating the instrument; and in the absence of such further proof, the holder is entitled to recover.

NOT SUFFICIENT TO PROVE VALUE MERELY.—In spite of some expressions or adjudications to the contrary, it is well settled that the holder does not meet the burden cast upon him by proof of value merely, but he must also prove, as above stated, that he gave value within the conditions which the law prescribes to establish the character of a *bona fide* holder; or, as it is sometimes expressed, he must show all the circumstances under which he took the paper, with a view to determining his good faith as a holder. But want of notice can not, from the nature of the issue, in general be shown by direct evidence, and it has been held that proof that the holder before maturity paid full value for the instrument sued upon, is sufficient to re-establish his case, and such evidence stands in lieu of direct proof of *bona fides* and absence of notice, until overcome by rebutting evidence.

THE REASON OF THIS RULE has been stated to be that the proof of fraud or illegality of the inception of the instrument raises a presumption that the party to the fraud who formerly held the paper, and who is precluded from recovering thereon himself, has placed it in the hands of another to sue upon it for him, and this presumption the holder must overcome.

IN A SUBSEQUENT NEGOTIATION.—If any negotiation of the instrument subsequent to its issue is affected with fraud, illegality, or duress, the burden, just as in the case of fraud in the inception of the instrument, is shifted to the holder to show that he or some one under whom he claims, took such instrument subsequent to such fraud, illegality, or duress, *bona fide* and for value."

In support of the text entitled, " In a subsequent negotiation," are cited : Hall v. Featherstone; Smith v. Braine; Harvey v. Towers; Bainbridge v. Louisville; Jackson v. Heath; Millis v. Barber. Of these, in Hall v. Featherstone, 3 H. & N. 284, it appeared by plea that the bill was given to one Wallis to get the same discounted and return the

proceeds to the defendant. Wallis enclosed the bill to the plaintiff and absconded. The court held, only, that proof of these circumstances threw upon the plaintiff the onus of showing that he gave value for the bill.

Smith v. Braine, 3 Eng. Law and Eq. 379, is a similar case of a breach of trust by an agent; the court held merely that, it being shown that the agent parted with the bill in bad faith, the onus of proving consideration was upon the plaintiff.

Millis v. Barbour, 1 M. & W. 425, is a dictum in accordance with the doctrine of the two cases last mentioned.

Harvey v. Towers, 4 Eng. Law and Eq. 531, is to the same effect with some comments by Martin, B., upon the unphilosophical nature of the rule of pleading under which the onus of showing the giving of consideration was thrown upon the plaintiff.

In Jackson v. Heath, 1 Bailey (So. Car.) 355, the court held :

" That it was not necessary, to entitle the plaintiff to recover, that he should have proven his having given a valuable consideration for them (the notes in suit) unless it appeared that they had been lost by the real owner, or stolen or otherwise forcibly or fraudulently obtained from him; or, in short, that the plaintiffs' possession was not *bona fide*."

In Bainbridge v. City of Louisville, 83 Ky. 285, it appeared that the city, after receiving notice of the theft of bonds issued by it, paid seven on presentation. The court held that having received this notice, it was bound to show, as against the party from whom the bonds were stolen, that the payment was made to holders who were purchasers in good faith before maturity and for value.

These cases do sustain the text but they fall far short of sustaining the contention of appellant in this case; and the same is to be said of the cases cited under the second division, " 4," of the text entitled, " Not sufficient to prove value merely."

In Kinney v. Kruse et al., 28 Wisc. 183–188, to which attention is called, it was held that " the fraudulent putting

in circulation of a negotiable instrument which operates to change the burden of proof and call upon the plaintiff to prove his title as a *bona fide* holder is where this is done fraudulently as to the defendant or maker, and not where it is done as to the payee or some intermediate holder or party to the paper."

Our attention is called to Hide & Leather Bank, 82 Ill. App. 484, affirmed in 184 Ill. 416. A notable distinction between that case and the present is, there the trial court found for the party to whom the note and mortgage was first transferred by Schintz; in the present case the trial court has found for the party, appellee, to whom Schintz, after they had been handed to him by appellant, transferred for value the note and mortgage. Moreover, in the case reported in 184 Ill. 417, no evidence was introduced by the bank showing that it did not have notice of the purpose for which Schintz received the note and mortgage; in the present case, the vice-president of the bank, before the note became due, talked with Schintz about it and was assured by him that it was all right and would be paid when due. There are no suspicious circumstances attending the transfer to the bank.

From whom could the bank make inquiry save Schintz? Appellant's name did not appear upon the paper; there was nothing to notify any one that he had ever had any connection therewith; while, so far as appears, neither the maker of the paper nor any person save Schintz and appellant knew that the securities had been sold to any one. Appellant was not induced by fraud to part with the note and mortgage; he was defrauded by Schintz, not in being induced to part with his securities, but in the failure of Schintz to make a proper use thereof.

Appellant gave to Schintz the opportunity to commit the fraud of which he was guilty. Appellant is an innocent party; so is appellee; under these circumstances, upon the party who placed in Schintz' possession the means whereby he was enabled to perpetrate a fraud, must fall the loss occasioned thereby.

The decree of the Circuit Court is affirmed.