## The First National Bank of McLeansboro, Appellant, v. The Cloud State Bank, Appellee.

1. BANKS AND BANKING, § 148*—*when title to money obtained by forgery passes.* Title to money obtained by forgery of a check passes by mere delivery if made in good faith and for value.

2. BANKS AND BANKING, § 148*—*when bank paying out money on forged check is not entitled to follow it and recover it from another bank.* A bank paying out money upon a forged check is not entitled to follow it and obtain it from another bank which has had the forger arrested for a previous forgery and obtained full satisfaction of its claim from him, although the defendant had great cause to suspect that the money was obtained from the plaintiff by fraud, where due inquiry failed to discover the fraud and the plaintiff bank itself did not know of the forgery until after the money was received by the defendant.

3. BANKS AND BANKING, § 148*—*when money is received by bank from forger of check in due course of business.* Money received by a bank cashier from a forger to reimburse the bank for a previous forgery, although received after banking hours and in the jail, is still received in due course of business so as to pass title to the recipient in good faith and for consideration.

4. BANKS AND BANKING, § 148*—*when defrauded bank following

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

*money obtained by forgery may not recover from another bank amount paid to trace forger.* A defrauded bank in attempting to follow and recover money obtained by forgery cannot recover a small amount paid by the forger to another bank to cover its expense of tracing him on another forgery, where the amount of said expenses was agreed between the forger and the defendant bank which took without actual notice of the taint attached to the money.

Appeal from the Circuit Court of Hamilton county; the Hon. JULIUS C. KERN, Judge, presiding. Heard in this court at the October term, 1918. Affirmed. Opinion filed April 12, 1919.

J. H. LANE and CREIGHTON & THOMAS, for appellant.

JOHN M. ECKLEY and W. W. DAILY, for appellee.

MR. JUSTICE McBRIDE delivered the opinion of the court.

The appellant sought by this proceeding in the Circuit Court of Hamilton county to recover $100 from the appellee that had been paid to it under the following circumstances: On January 10, 1918, Marion Hoover by the name of Kinney Turrentine obtained from appellee, located at McLeansboro, Illinois, by a forged check, the amount of $85, $25 of which was applied to the payment of his father's note held by said bank and $60 in cash was taken by Hoover. The forgery was not discovered until about 3 days afterwards when diligent search was made for Hoover but they were unable to locate him. On January 25, 1918, Hoover returned to McLeansboro and ate supper and breakfast the next morning at the restaurant of T. A. Echols. Hoover told Echols that he had money in the bank and as soon as it opened he would get his money and pay him. About noon Hoover returned to the restaurant and paid Echols and at the same time displayed a large roll of bills. Frey, the cashier of appellee, had learned that Hoover was in town and made a search for him but was unable to locate him. He saw Echols and he told him that Hoover had been

there and paid his bill and had a roll of money. Frey in his efforts to locate Hoover was informed that he had been at the store of Ottis McNabb and there bought some clothing. Frey then inquired of McNabb if Hoover had passed a check on him and was informed he paid for the clothing purchased partly with cash and partly with a certificate of deposit on the First National Bank of McLeansboro. Frey then remarked that Hoover was no good that he had cashed a bad check on the Cloud State Bank and that he bet also he had got the First National Bank for some money. Frey then made inquiry of the bookkeeper, a lady, at the First National Bank to ascertain if Hoover had passed a check on that bank, but she did not know and Frey obtained no information from that source. Frey then caused a warrant to be issued for Hoover, who was arrested at Carmi and brought back to McLeansboro the same evening. A preliminary trial was held and he was bound over to the grand jury. The State's Attorney, in the presence of Frey, inquired of Hoover about his conduct for the purpose of ascertaining if he had been guilty of any other fraud or passing any other forged checks, but Hoover denied that he had forged any other check than the one upon appellee's bank. Hoover then told the State's Attorney and Frey that he had some money and thereupon took $10 out of his mouth and told them that he had about $125 hidden in the jail at Carmi under the stove, and also claimed that he had more money in the First National Bank but denied that he had forged any check upon that bank and insisted that he had worked for his money and that he also had part of the money that he had obtained from appellee's bank on the forged check and proposed to go to Carmi and get this money and pay it to appellee's cashier and also to pay him his expenses. They went to Carmi and obtained the money that he said was hidden in the jail. He then told Frey that he wanted to pay him back, that he had done him a wrong and

paid Mr. Frey $85, and $15 for expenses which Frey claimed he had incurred in and about the location of Hoover and this Hoover agreed to pay and gave Frey $15 more, making $100 in all, and at the same time told Frey that part of this was some money that he had obtained from appellee upon that forged check. At this time, which was on a Saturday, it was not known that Hoover had passed any forged check upon any other bank. On Monday afternoon following, the First National Bank learned that a check that had been given them by Hoover for $210 was a forgery and that he, by this forged check, had obtained from that bank $210. The clothing that Hoover had obtained from McNabb was returned to him and that money was paid to appellant, and the balance of the money that was hidden in the jail at Carmi was also paid to appellant. The court upon the hearing of this case refused to give appellant the $100 but adjudged that it should pay the costs of the suit, and this appeal is brought for the purpose of reversing the judgment so rendered.

It is the contention of appellant that the money in question belongs to appellant and was secured by Hoover from appellant's bank by means of a forged check, and then paid by Hoover to appellee as compensation for injuries it sustained by reason of a forged check passed by Hoover on appellee's bank prior to that time.

The principal and only meritorious question presented and argued by appellant is, Did the appellee receive the money in question in due course of business and in good faith and for a valuable consideration? If it did, then it has the right to retain it. If received in bad faith, or not in due course of business, as claimed by appellant, then it would have no right to retain this money.

In discussing this question it should be borne in mind that a distinction exists in law between money

and negotiable paper on the one hand and personal property upon the other. As to the former, the title passed by the mere delivery, if made in good faith and for value. For the reason that the business of the country is transacted by the mere delivery of money and commercial paper properly indorsed by one to another, and if the receiver should be restricted in his right to retain only such as the payor had actual title to, then such restriction would hamper the business of the country, and in fact destroy the usefulness of money as a circulating medium with which to transact business. The law makes no distinction between commercial paper not due and money. They are both treated differently from other classes of personal property with reference to the passing of the title. "The rule is well settled at common law that a bona fide holder of money or negotiable paper, transferable by mere delivery and not overdue, who has taken it in the usual course of business, and for a valuable consideration, acquires a perfect title. * * * This exception to the common-law rule, that the purchaser of a chattel can acquire no better title than the vendor had, has been adopted because, in the language of Lord Kenyon, in *Lawson v. Weston*, 4 Esp. 56, the contrary principle 'would at once paralyze the circulation of all paper in the country, and with it all its commerce.' " *Jones v. Nellis*, 41 Ill. 484. So that if stolen money is acquired by an honest taker, even from the thief, the title passes to such taker. "The rule of law which applies in this State, and which controls upon the facts here presented, is that even if money transferred to an honest taker was obtained by the one transferring it through a felony, yet the honest taker, who received it without knowledge of the felony and in due course of business, would acquire good title as against the one from whom it had been stolen." *Merchants' Loan & Trust Co. v. Lamson*, 90 Ill. App. 18-20. This doctrine is fully sustained by the case of *Jones v. Nellis, supra; Comstock v. Hannah*, 76

Ill. 530, and many other cases cited in the above-entitled cause.

It is said by counsel for appellant that the appellee was engaged in the banking business and that as this money was obtained after Hoover was arrested and while he was in jail, that it was not acquired in due course of business. We do not understand or believe that due course of business limits the transaction to the particular place or business in which the party is engaged, but may extend to any legitimate business even though it may differ from that in which said party may have heretofore been engaged or was engaged at the time of the transaction. Under the statute of this State the appellee had the right to recover from the thief the property stolen from him, or receive from the thief compensation for the injuries sustained, provided he did not in doing so compound the crime. Section 43, ch. 38, Hurd's Rev. St. Ill. (J. & A. ¶ 3543). There is no evidence of any effort at compromising the crime by the appellee. The cashier of appellee simply made a strenuous and successful effort to obtain compensation for the injuries appellee had sustained on account of the forgery of the order upon its bank. This was no more than the statute permitted, and we cannot say that such was not performed in due course of business.

It is next insisted, and with much earnestness, that the cashier of appellee acted in bad faith in securing this money, and this, in our judgment, is the crucial question in this case. Counsel for appellant in their argument say: "Appellee was not a taker in good faith without notice for the circumstances under which its cashier found the money in Hoover's possession were such as would excite suspicion and distrust in the mind of any reasonable person and put any one on inquiry as to Hoover's right to the money. Although the cashier, Frey, may not have known whose money it was he had every reason to believe, and did in fact believe, that it had been stolen or secured by

some fraud from some one." And then says that Frey knew Hoover was a criminal for he had passed a forged check on his bank, and knew he had no money in the morning but had learned he had a roll of money between twelve and one o'clock. He found he had spent $65 at the clothing store and deposited a certificate on appellant's bank for $35. He told McNabb that he bet Hoover had skinned the bank. He found $10 hidden in Hoover's mouth and $125 hidden under the stove in the Carmi jail. It further appears from the evidence that Frey inquired at the store of McNabb and there learned that Hoover had paid for clothing purchased, part in cash and part with a certificate of deposit from appellant's bank; that he had made inquiry of appellant's bank to ascertain if Hoover had procured any money there but was unable to learn anything. He inquired of Hoover where the money he was paying to appellee came from and was told that à portion of it was the money he obtained from appellee and the balance he had earned, but denied specifically that he had fraudulently obtained it from appellant's bank. We are inclined to the view that the circumstances surrounding the payment of this were sufficient to create a suspicion in the mind of appellee's agent that the money, or a portion of it at least, had not been honestly acquired, but there is no evidence that he knew it had been stolen from appellant or any one else. No authority has been cited by either counsel affirmatively showing what is meant by bad faith, but several authorities have been cited showing that circumstances very similar in character to those in this case do not constitute bad faith; that suspicious circumstances or gross negligence will not constitute bad faith. *Comstock v. Hannah*, 76 Ill. 535; *Jones v. Nellis, supra; Merchants' Loan & Trust Co. v. Lamson, supra.* "Suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the

492 Appellate Courts of Illinois.

The F. N. Bk. of McLeansboro v. The C. S. Bk., 213 Ill. App. 485.

transfer, will not defeat his title. That result can only be produced by bad faith on his part. The burden of proof lies on the person who assails the right claimed by the party in possession. Such is the settled law of this court, and we feel no disposition to depart from it.'' *Comstock v. Hannah, supra.* This same doctrine is fully sustained by the case of *Merchants' Loan & Trust Co. v. Lamson, supra,* and many other cases referred to in those opinions. Much reliance is placed by counsel for appellant upon the case of *Huggins v. People,* 135 Ill. 249, as showing that the appellee acted in bad faith in the taking of this money. The court in the case referred to found that the defendant was in possession of stolen property recently after the theft, which was not explained, and this it said would create a presumption under the law of guilt and warrant the jury in finding the defendant guilty. We do not regard this case as controlling for the reason that another and different rule is established by law with reference to money and negotiable instruments than that as to other stolen property. *Jones v. Nellis, supra.*

Counsel in their argument refer to the question of expenses having been paid out of this fund, and say there was no proof that appellee paid out $15 in expenses in trying to find Hoover. The proof is that Hoover and the cashier agreed that it would take $15 to cover the expenses, and that amount was paid for that purpose. We do not regard this point made as well taken.

While it is true that there were circumstances that might have created suspicion in the mind of the cashier of appellee at the time he received this money that he had not received it honestly, yet it must be remembered that at this time it was not known even by the appellant itself that a forgery had been perpetrated upon its bank, and this knowledge did not come to appellant until on Monday afterwards, so that appellee's

cashier could not have known at the time that he received the money that it was money received from appellant.

We are of the opinion that the finding and judgment of the court are correct in this case and the judgment is affirmed.

*Judgment affirmed.*