AMERICAN HARDWOOD LUMBER COMPANY *v.* MILLIKEN-JAMES HARDWOOD LUMBER COMPANY.

Opinion delivered November 17, 1919.

1.   CONTRACTS—SALE OF LUMBER—RESCISSION.—A. sold lumber to B., and when the same arrived B. notified A. that it was of inferior grade, and declined to accept it.   A. wrote B. expressing surprise that B. had unloaded the lumber if it looked bad, and that if B. did not want it to rebill it.   A. also wired B., "without waiving any of our rights, if you do not want the car of lumber, will ask that you reload same and consign to J."   *Held,* the court properly submitted the issue of a rescission of the contract, and that a finding that there was no rescission was supported by the testimony.

2.   SALES—EXAMINATION BY BUYER.—As a general rule in case of an executory contract of sale, the buyer is entitled to a fair opportunity to inspect or examine the goods tendered, to see if they conform to the contract, and if they do not do so, may reject them.

3.   SALES—LUMBER—INSPECTION—EFFECT OF UNLOADING.—Under a contract made by letter and telegraph, A. shipped a car of lumber to B., giving B. the right to unload and inspect the lumber. When the car arrived, before unloading, B.'s foreman reported that the same was "kindling wood and not worth the freight." *Held,* B.'s act thereafter, in unloading the lumber, operated as an acceptance of the same.

4.   SALES—LUMBER OF INFERIOR GRADE—SET-OFF.—When lumber of an inferior grade was shipped to a purchaser, he may accept same and plead a set-off in an action for the purchase price.

Appeal from Clark Circuit Court; *George R. Haynie,* Judge; affirmed.

*McMillan & McMillan,* for appellant.

1.   A verdict should have been directed for defendant (1) because the uncontradicted evidence shows that more than one-third of the lumber was different from that ordered and that the shipment was promptly refused and plaintiff promptly notified and (2) the evidence shows that the contract was mutually rescinded. 13 Corp. Jur., sec. 4, p. 2634 *et seq.;* 47 Ark. 519; 57 *Id.* 257. The contract was rescinded.

2.   A material part of the lumber was not shipped in compliance with the contract, and within a reasonable time defendant refused the shipment and promptly notified plaintiff of his refusal. 81 Ark. 459; Wharton on Sales (1909), sec. 473; Benjamin on Sales (6 Ed.), p. 600 (Am. note); 35 Cyc. 221-225.

3.   If goods are sent to a buyer of a grade or quality which he never agreed to take, the seller is a mere volunteer, and the buyer is in the position of a bailee who has goods thrust upon him without his assent; he must take reasonable care of the goods, but nothing more can be demanded of him. He is under no obligation to return the goods to the seller, and after notice that the goods have not been and will not be accepted, the seller must assume the burden of removing them. ' Williston on Sales (1909), sec. 407. The cost of inspection, etc., if the goods are not what the contract calls for, would be a reasonable element of damage in an action against the seller for breach of contract that reasonable expense was incurred in examining the goods and detecting their insufficiency. *Ib.,* sec. 477.

4.   It was reversible error to give instruction No. 3 for plaintiff and to modify No. 4 for defendant. Defendant had the right to unload the car and hold the lumber until the freight was refunded. 45 Ark. 284.

*Collaway & Huie,* for appellee.

On the whole case, the case was properly tried and there was no error in the instructions given or refused. 53 Ark. 159; 81 *Id.* 561; Benjamin on Sales, sec. 901.

Appellee sued appellant to recover $537.64 alleged to be due it for a car of lumber. Appellant defended the suit on the ground that the car of lumber did not conform to the contract of purchase and that on that account it did not accept the lumber. The facts are as follows:

The Milliken-James Hardwood Lumber Company, appellee herein, is a corporation located at Arkadelphia, Arkansas, and operates a mill which saws hardwood timber. The American Hardwood Lumber Company is a foreign corporation engaged in the business of buying and selling hardwood lumber by the wholesale and is located at St. Louis, Missouri. It has an office and yard at Benton, Arkansas, and has complied with the laws of the State with regard to foreign corporations doing business in this State. In May, 1918, by telegrams and letters, a contract was entered into whereby appellee agreed to ship to appellant a car of two-inch edged hickory flitches two inches thick No. 2 common and better at $45 per thousand f. o. b. Arkadelphia, Arkansas. Appellee was directed to load and ship the same to appellant at St. Louis, Missouri. On May 21, 1918, appellee wrote to appellant stating that the car of hickory was now being loaded for shipment and that it would be glad to have appellant look the lumber over carefully when it was unloaded in its yards. The car of lumber was duly shipped by appellee and delivered by the carrier to appellant at its yards in St. Louis, Missouri. In relation thereto on June 6, 1918, appellant wrote to appellee as follows:

"Gentlemen: The car of hickory is in and inspected by the National Hardwood Lumber Association's inspector, and we enclose said inspector's report. Car No. 14786. When the car first was opened our foreman reported back that it was "kindling wood," and not even worth the freight; but we of course unloaded the stock, and the report shows this is about right.

"We bought No. 2 common and better, log run stock, but you will note that you have no doubt shipped the good stock out and this practically No. 2 and No. 3 common.

"We have paid your draft for 80 per cent. because we have dealt with you gentlemen before and felt that you were very honorable. We feel sure some mistake has been made. We can not use the stock. Out of 11,000 feet over 4,600 is No. 3 common, and less than 800 feet of No. 1 common. Balance No. 2 common, No. 1 and 2nds ¾. It is quite evident the best has been shipped elsewhere or else you cut up the cull and mill cull logs. Kindly send us check for the draft we have paid and we will hold the car here for you until you can make some disposition of it, without cost to you.

"Thanking you for prompt compliance with this request, we remain."

On June 10, 1918, appellee wrote to appellant the following:

"We received your letter Saturday, too late to answer same. We are certainly surprised, for we can not understand why you wanted to unload the car if it looked bad to you. We have the lumber sold. You should not unload any lumber for us because we are not going to stand for any shuffling up, and if you do not want the car just like we loaded it for you, then rebill. We really did not have the hickory to spare, but we felt like we were accommodating you. Now, if you will rebill the car we will get out of your way."

On the same day appellee also sent to appellant the following telegram:

"Without waiving any of our rights, if you do not want car of lumber will ask that you reload same and consign to J. W. Black Lumber Company, Minneapolis, Minn."

According to the testimony of I. W. Milliken, the manager of appellee, he entered into a contract on May 20, 1918, to sell a car of hickory lumber to appellant for appellee. There was nothing less than No. 2 common that went from the mill out to the piles from which the car was loaded. The demurrage on a car of lumber is $3 for the first three days, $6 for the next four days and $10 a day thereafter. After the present suit was brought

by appellee against appellant, appellant attached the car of lumber in a suit before a justice of the peace in St. Louis for the freight and cost of loading and unloading the lumber and the lumber was sold for these items.

Dave Hughes was lumber inspector for appellee and testified that he inspected the car of lumber as it was loaded and that the lumber placed in the car strictly came up to the specifications of the contract. On cross-examination he stated that he could not step in a car where it was loaded and grade it without examining every piece of it. The reason given was that you could not tell what was in a board by looking at a load of lumber in a car. A board might be good at the end and be rotten three feet from the end. He stated that there was nothing in the car below the grade of No. 2. His testimony was corroborated by that of R. C. Cessor, another employee of appellee. He edged the lumber and helped load it in the car and said that the grade of lumber put in the car was No. 2 and better.

According to the testimony of Geo. H. Cottrill, secretary of appellant, his company had purchased lumber from time to time from appellee. Appellant had had a branch office and yard at Benton, Arkansas, for fourteen or fifteen years. Appellant advanced the freight charges on the car of lumber in question in the sum of $133.08. This was according to the rules of the Terminal Association on whose tracks appellant's lumber yard is located and appellant paid the freight in the ordinary course of business on this account. Cottrill was familiar with the grades of hardwood lumber, having had twenty years experience. He saw the car of lumber in question and said the lumber was not of the grade specified in the contract.

Appellant did not reload and rebill the lumber because the railroad would not accept it without payment of the freight charges, and appellee refused to pay this as well as the cost of unloading and reloading the car of lumber.

Other witnesses who had had experience in inspecting hardwood lumber, testified that it did not come up to the grade specified in the contract.

The jury returned a verdict for appellee and to reverse the judgment rendered upon the verdict appellant prosecutes this appeal.

HART, J., (after stating the facts).   (1)   It is earnestly insisted by counsel for appellant that the court should have given a peremptory instruction for it.   The court submitted to the jury under proper instructions the question of whether or not the lumber shipped came up to the grade specified in the contract and the jury decided that question in favor of appellee.   Counsel for appellant concede that there was sufficient testimony to support the verdict in this respect, but claim that appellant was entitled to a directed verdict because the correspondence between the parties resulted in a contract rescinding the original agreement under which the lumber was sold. They rely on the letter written by appellee to appellant on June 10, 1918.   In that letter appellee stated that it was surprised at appellant unloading the car if it looked bad to it.   It further stated that appellee had the lumber sold and that if appellant did not want the car, to rebill it. On the same day appellee sent to appellant a telegram as follows:

"Without waiving any of our rights, if you do not want car of lumber will ask that you reload same and consign to J. W. Black Lumber Company, Minneapolis, Minn."

This telegram must be read in connection with the letter of the same date.   When this is done, the jury might have found that the appellee did not offer to rescind the contract unless appellant reloaded the lumber and rebilled it as directed and that appellant did not court properly submitted to the jury the question of comply with the offer so made by appellee.   Hence the court properly submitted to the jury the question whether or not there was a rescission of the contract and there was testimony sufficient to support the finding of the jury that there was no rescission of the contract.

(2-3)   It is next insisted that the court erred in giving instruction No. 3 for appellee and in modifying instruc-

tion No. 4 asked by appellant. These assignments of error relate to the same thing and may be considered together.

Instruction No. 3 reads as follows:

"You are instructed that if you find from the evidence that the defendant when it first opened the car saw and knew that it did not come up to the contract that defendant had no right to unload the car, and if it did unload the car thereafter it amounted to an acceptance, and you will find for the plaintiff."

Instruction No. 4 as modified reads as follows:

"The court further instructs you that when the car of lumber reached the defendant, the defendant had the right to inspect same and to unload the car, and the court instructs you that by paying the freight on the car and unloading same and inspecting same the defendant will not be held to have accepted the car, unless you further find that defendant, before unloading the car, knew that the lumber was not of the kind and quality provided for in the contract."

The modification consisted in adding the qualification at the end of the instruction so as to make it conform to instruction No. 3. As a general rule in case of an executory contract of sale the buyer is entitled to a fair opportunity to inspect or to examine the goods tendered, to see if they conform to the contract, and if they do not do so, may reject them. *Deutsch* v. *Dunham,* 72 Ark. 141. In the case at bar the contract was made by telegrams and letters. On the 21st of May, 1918, appellee wrote to appellant that the car was being loaded for shipment and stated that appellee would be glad to have appellant look it over carefully when it was unloaded in its yard. This of itself gave appellant the right to inspect the lumber in the car and to unload it for the purpose of inspection if necessary to do so. Appellee had already inspected the lumber as it was loaded in the car. The inspection at appellant's yards was therefore entirely for the benefit of appellant and it might accept the lumber with or without inspection or by making such inspection as it saw

fit to make.    In its letter of June 6, 1918, appellant stated
to appellee that when the car was first opened its fore-
man reported back that the lumber was "kindling wood"
and not even worth the freight.    If appellant knew by the
examination of the lumber in the car that it did not con-
form to the contract, it was in a position to decide
whether or not it would accept the lumber and the court
properly instructed the jury that if it saw and knew that
the lumber did not come up to the contract, it had
no right to unload the car, and if it did unload it, this
amounted to an acceptance.    Knowledge that the lumber
did not conform to the contract was all that was neces-
sary to enable appellant to exercise its right to refuse or
accept the shipment on that account.

It is next insisted that instruction No. 3 is erro-
neous because the letter of May 21st, from appellant to
appellee says, "In regard to the car now being loaded for
you, we should be glad to have you look over it carefully
when it is unloaded in your yards."    As above indicated,
this letter was a part of the contract between the parties
and gave appellant the right to inspect the car of lumber
before accepting it and to unload it for that purpose if
necessary.    However, as above stated, the appellant
might accept the lumber without inspecting it at all, or
after giving it such an inspection as it deemed necessary.
If it knew after its foreman had inspected the lumber in
the car that it did not conform to the contract it was in
possession of all facts necessary for it to determine
whether or not it would accept the car of lumber and the
court was right in instructing the jury that if appellant,
when it first opened the car saw and knew that the lum-
ber did not come up to the contract, it had no right to un-
load the car and if it did unload the car thereafter, it
amounted to an acceptance.

It is also suggested that appellant had a right to un-
load the car for the purpose of inspecting the lumber be-
cause an inspector for appellee, Dave Hughes, testified
that a man of his experience could not step in a car of
loaded lumber and grade it without examining every

piece of it, because you can not tell what is in a board by looking at a load of it; that it might be good at the end and rotten three feet from the end. It was not necessary for appellant to grade the lumber if it already knew that the lumber did not come up to specifications and that it was not going to accept it on that account. The lumber was in a box car and an examination of the lumber in the car showed the condition of the lumber on the top and from the bottom to the top on the side of the car when the doors were open. So while each piece of lumber could not be graded without unloading it, it was possible that the foreman of the appellant could tell by examining the lumber in the car that it did not conform to the contract. Appellant admitted in its letter to appellee that it knew the lumber did not conform to the contract before it unloaded the same, and this, together with the attendant circumstances, constituted evidence upon which to predicate the instruction. Appellant might have accepted the lumber without asserting its right of inspection, and have relied on its legal right to ask for a reduction of the price in case the lumber was of inferior quality. That is to say, it might have recovered such damages in a cross-action if it had already paid the purchase price, or it might have set such damages up by way of recoupment if suit was brought by appellee for the price of the lumber.

The court at the request of appellant gave instruction No. 2, which is as follows:

"The court instructs you that the defendant had the right to unload the car to inspect it, and if you find that a material portion of the lumber was not in accordance with the order, the defendant would have the right to hold the lumber until the freight and unloading charges were paid the defendant."

It is claimed that the instruction is inconsistent with instructions Nos. 3 and 4, above set out and considered. We do not think so. It is well settled in this State that the court can not be required to cover every phase of the case in one instruction. In instruction No. 2 the court

was submitting to the jury appellant's theory of the case. Under the contract appellant had the right to inspect the lumber before accepting it and to unload it for that purpose. Then if appellant found that the lumber did not come up to grade it would have the right to reject it, and it need not have returned the lumber, but might have held it until the freight advanced by it and the cost of unloading were paid.

(4) On the other hand, the right of inspection being to enable appellant to ascertain if the lumber conformed to the contract before accepting it, if it knew by examining the lumber while in the car that it was so defective that it did not conform to the contract, appellant was then put to its election and if it unloaded the lumber such act amounted to an acceptance of it. If appellant accepted the lumber it could not hold it for the freight and cost of unloading, but on the other hand it was its duty to have paid the purchase price. Of course, as explained above, it might have accepted the lumber, although of an inferior grade and have set off the damages in a suit for the purchase price. No such issue was made in this case. It was the claim of appellee that the lumber came up to grade and the jury was expressly told that appellee was not entitled to recover anything unless the lumber was of the kind and grade specified in the contract.

We find no prejudicial error in the record, and the judgment will be affirmed.