**W. HORACE WILLIAMS CO., Inc., et al. v.
VANDAVEER, BROWN & STOY et al.
No. 10011.**

Court of Civil Appeals of Texas. Galveston.
April 15, 1935.

Rehearing Denied May 9, 1935.

A. D. Dyess, of Houston (J. W. Cook, of Houston, of counsel), for appellants.

Baker, Botts, Andrews & Wharton, of Houston, S. H. German, of Austin, and Tom Scurry, of Houston, for appellees Binswanger & Co. et al.

Boyles, Scott, Fahey & Atkinson, of Houston, for appellees First Nat. Bank of Houston et al.

C. B. Wood, Lawler & Wood, R. W. Lawler, and R. R. Wood, all of Houston, for appellees Houston Co-operative Mfg. Co. et al.

Cole, Cole, Patterson & Lawler, of Houston, for appellees Vandaveer, Brown & Stoy et al.

Terrell, Davis, Hall & Clemens, of San Antonio, and Andrews, Kelley, Kurth & Campbell, of Houston, for appellee Steves Sash & Door Co.

Andrews, Kelley, Kurth & Campbell, of Houston, for appellees Dow Motor Co. et al.

Allen, Helm, Jacobs & Settegast, of Houston, for appellee Bering-Cortes Hardware Co.

J. W. Lockett, of Houston, for appellees American Const. Co. et al.

E. R. Campbell, of Houston, for appellees W. L. Macatee & Sons.

LANE, Justice.

This suit was instituted by W. Horace Williams Company, Inc., hereinafter referred to as Williams Company, and W. Horace Williams, individually, against Thomas M. Murray, Vandaveer, Brown & Stoy, Inc., Steves Sash & Door Company, Powers Plastering Company, Peden Iron & Steel Company, W. L. Macatee & Sons, Carter Lumber Company, and against 102 other persons and companies, the names of whom and which are not important in the disposition to be made of the appeal presented to this court.

Since no objection is made by any party to the statement made by counsel for the plaintiffs as to the substantial allegations of the plaintiffs' petition, we shall substantially adopt the same as our own, with some additions of our own.

Plaintiffs substantially alleged:

That W. Horace Williams Company, Inc., is a corporation organized under the laws of the state of Texas, with W. Horace Williams as its president, engaged in the business of construction contractor. In 1928, and long prior thereto, Thos. M. Murray was engaged in a like character of business at Houston, Tex., and on the 15th day of March, 1928, he made and entered into a contract with the First Methodist Church South, Inc., of Houston, Tex., whereby he agreed, for a total consideration of $208,318.50, to construct for it an educational building at the corner of Clay avenue and Travis streets, Houston, according to plans and specifications prepared by James Ruskin Bailey, architect. That at the time said contract was awarded to Murray, and before the execution and delivery of same by the parties thereto, Murray was required to give a contractor's bond, and, being unable to furnish to any surety or bonding company a statement of his financial condition that would justify such surety or bonding company to execute said bond as his surety, Murray applied to the plaintiffs to finance for him the construction of said educational building and to execute to the Metropolitan Casualty Insurance Company of New York a contract of indemnity. Appellants agreed to finance Murray in the construction of said educational building, and agreed to execute contracts of indemnity to said casualty company, and thereafter executed contracts of guaranty and indemnity to the Metropolitan Casualty Insurance Company, upon an agreement with Murray confirmed by letters passing between him and the plaintiffs, which said letters read as follows:

"Houston, Texas,
"March 10, 1928.
"W. Horace Williams Co., 833 Howard Avenue, New Orleans, Louisiana.

"Gentlemen: I am enclosing herewith two guaranty blanks for your company and Mr. Williams to execute.

"Mr. Scott, President of the First National, said there was some doubt as to whether an incorporated company could, under the law, become guarantor for some one, for this reason they made out two separate blanks to be signed. I think this is in line with what Mr. Williams told me, that is, he and the company both would sign.

"The Board of Trustees are meeting Monday at three o'clock and from all indications, I will sign up Monday afternoon or Tuesday, for this reason, I would like to get these guaranties back as soon as possible.

"I intend taking up with them Monday morning the proposition of the bond and try to get them to accept your bond instead of a surety Company. How is Woolf and his athletic back?

"Yours truly,
"[Signed]   Thomas M. Murray."

"Houston, Texas,
"March 10, 1928.
"W. Horace Williams Co., 833 Howard Avenue, New Orleans, Louisiana.

"Gentlemen: As discussed with your Mr. Williams and Cappel, I am entering into a contract with the First Methodist Church, Houston, Texas, for the construction of an Educational Building, corner Travis Street and Clay Ave. I agree, for and in consideration of your financing the construction of the project and indemnifying the Bonding Company writing the surety bond, to pay you fifty per cent of the net profits derived from the completion of the contract.

"I am to handle the construction, including all the details, bookkeeping, etc., with my organization and make reports to you as often as wanted as to the status of the work, money borrowed, money collected, bills paid, in fact complete information.

"You and Mr. Williams are signing guaranties at the First National Bank, Houston, to the amount of $30,000.00 to be used by me in financing the cost of carrying the work. I will keep this money in separate account for this particular job and will also deposit all money collected from estimates in this same account.

"This I believe outlines our verbal agreement, but if you want it stated in a different form or contract, I will be glad to do so.

"Yours very truly,
"[Signed]   Thomas M. Murray."

"Houston, Texas,
"March 14, 1928.
"W. Horace Williams Co., 833 Howard Avenue, New Orleans, Louisiana.

"Gentlemen: I am in receipt of your letter of March 12th enclosing two Guarantee

Blanks signed by your Company; also Mr. Williams.

"Supplementing my letter of March 10th outlining our agreement, I beg to state that if there is any loss on this contract it will be shared equally between your Company and myself. I believe this covers the proposition.

"Very truly yours,
"[Signed] Thomas M. Murray."

"Houston, Texas,
"March 21, 1928.
"W. Horace Williams Co., 833 Howard Avenue, New Orleans, Louisiana.

"Gentlemen: I am enclosing herewith two copies of application for Contract Bond and Indemnity Agreement attached, which Mr. Williams and your company are to sign—returning one copy to me and keeping the other.

"I am also enclosing a copy of my contract for your files. You will note that the fifth floor of the building is omitted, but the owners have the option of accepting the alternate price on same within 30 days. There is some chance of this being added.

"You will note that the surety company is the Metropolitan Casualty Insurance Co., of New York. In signing up the contract, the Committee wanted the bond handled through a local agent who is a member of the church, as the local agent is turning over his commission to the Church; therefore I am writing it through this Company—however, this Company has agreed to writing the bond without either one of us putting up a statement, so I think it has worked out very well. The Committee and architect have co-operated so nicely on everything, that I thought it well to conform to their wishes in the matter of the bond.

"I think that John Rosenauer is going to make a good man on the job, and we are getting along fine. I have let four subcontracts so far and have picked up $1,700.00 saving under my estimate, so things are going on very well.

"I am also enclosing copy of bond form.
"Yours very truly,
"[Signed] Thomas M. Murray."

"New Orleans, La.,
"March 26, 1928.
"No. 722
"Indemnity Agreement, et.
"Mr. Thomas M. Murray, Second National Bank Bldg., Houston, Texas.

"Dear Sir: We received several days ago your letter of March 21st, enclosing two copies of application for contract bond and indemnity agreement, also copy of bond form and contract.

"We are returning to you enclosed herewith the original application for contract bond and indemnity agreement, which Mr. Williams has signed personally and for the company. The copy of this application and indemnity agreement also copy of bond form and contract are retained for our files.

"In looking over these papers, the only discrepancy we note is that in the bond form the building is referred to as a one-story building. This, we presume, can be easily corrected.

"Yours very truly,
"W. Horace Williams Co., Inc.,
"H. J. Lane, Auditor."

That the contract of indemnity executed by plaintiffs to the Metropolitan Casualty Insurance Company was in the usual form of such indemnity agreements, and obligated plaintiffs in indemnity and hold harmless the Metropolitan Casualty Insurance Company on account of the contractor's bond which it executed as surety for the said Murray.

That, in further pursuance to their agreement to finance the said Murray in the construction of said educational building, plaintiffs arranged with the First National Bank of Houston, Tex., that said bank should advance to Murray in the first instance $30,000, and an additional $5,000, or a total of $35,000, upon two contracts of guaranty, dated at New Orleans, La., on the 12th day of March, 1928, the first signed by W. Horace Williams Company, Inc., the second by W. Horace Williams, individually, by the terms of which contracts of guaranty plaintiffs guaranteed to the First National Bank of Houston, Tex., the payment of "such loans, discounts, overdrafts, bills of exchange, and every claim, demand, right, or cause of action of any nature whatsoever of the said bank against Thos. M. Murray to the extent of $35,000.00."

That, acting upon said contracts of guaranty, the First National Bank of Houston advanced to Murray the sum of $30,000, and received from Murray his notes, aggregating said sum, payable to said bank on demand. That thereafter, on August 23, 1928, Murray appealed to plaintiffs to increase their said guaranty to said bank to the sum of $35,000, and plaintiffs thereupon wired said bank as follows:

336

"New Orleans, La.,
"August 23, 1928.
"First National Bank, Houston, Texas.

"Mr. Tom Murray temporarily in need of Five Thousand Dollars additional on Educational Building contract there stop I hereby authorize Five Thousand Dollar increase in guaranties signed by myself and by W. Horace Williams Company Incorporated stop confirming this increase in guaranties by mail today stop shall appreciate your advancing this additional amount to Mr. Murray under increased guaranties.

"W. Horace Williams."

That on March 10, 1928, and long prior thereto, and at all times subsequent to said date, Murray was wholly insolvent and owed large sums of money to the appellees herein and to his various other creditors, whose various accounts were open, unsecured accounts, or were evidenced by the unsecured promissory notes of Murray, and, no sooner had plaintiffs arranged with the First National Bank of Houston for a line of credit to Murray, in the first instance of $30,000, and later in the total sum of $35,000, than the said Murray began borrowing money from said bank on said contracts of guaranty executed by plaintiffs to said bank, and in conformity to his agreement with plaintiffs placed the money so borrowed in a new account to the credit of "Thos. M. Murray Special," in which name said account was at all times carried by said Murray in said First National Bank; and no sooner were said funds placed on deposit to the account of Thos. M. Murray Special than the said Murray began the payment of his indebtednesses to the appellees herein and to his other unsecured creditors out of said funds to the account of "Thos. M. Murray Special," on deposit in said First National Bank of Houston.

That plaintiffs had no knowledge that the funds of the joint undertakers were thus being misapplied and converted by Murray and were being paid by Murray to his various unsecured creditors, who were pressing him for payment of their respective accounts, until after the approximate completion by Murray of his contracts with the First Methodist Church (a second contract having been made regarding the remodeling of the church proper on a cost plus basis), when Murray went to New Orleans and there confessed to plaintiffs that the trust funds intrusted to him and made available to him by plaintiffs had been misapplied, and informed plaintiffs that debts still existed on account of labor and material entering into the construction of the First Methodist Church educational building in a sum in excess of $60,000.

Immediately thereafter the First National Bank of Houston, Tex., demanded of plaintiffs the payment of the $35,000, for which plaintiffs stood guaranty, together with the sum of $274.17 interest thereon, which sum of $35,274.17 plaintiffs paid to the First National Bank, and received from said bank the note evidencing the indebtedness of Murray to said bank (all of said indebtedness having then been placed in one note), which note reads as follows:

"$35,000.00

Houston, Texas, Dec. 31, 1928.

"On demand after date, I, we, or either of us, promise to pay to the order of the First National Bank of Houston, Texas, Thirty-Five Thousand and 00/100 Dollars at its office, for value received, with interest at the rate of six per cent per annum from date until paid.

"The makers and all endorsers, sureties and guarantors, hereby severally waive demand, notice, presentment, protest, suit, notice of dishonor, notice of presentment, notice of non-payment, and notice of protest, upon or against any of the makers, endorsers, sureties or guarantors of this note, and agree that this note may be renewed or extended from time to time without notice to them.

"And in the event default is made in the payment of this note at maturity and it is placed in the hands of an attorney for collection, or suit is brought on the same, or collected through the Probate or Bankrupt Court, then an additional amount of ten per cent on the principal and interest on this note shall be added to the same as collection fees.

"[Signed] Thos. M. Murray."

Upon plaintiffs receiving said note from said bank, said note was indorsed by said bank as follows:

"Pay to the order of W. Horace Williams Company, Inc., a Texas corporation, without recourse on us.
"[Signed] First National Bank of Houston,
"By J. T. Scott, President."

It was further substantially alleged that Murray had paid to certain of the defend-

ants funds furnished him by plaintiffs, and on deposit to account of Thos. M. Murray Special, in the First National Bank, in payment of pre-existing indebtedness of Murray to certain creditors, and that, in certain instances where payment had been made out of said special account in settlement of certain specific invoices for which the joint undertakers were jointly liable, the creditors receiving checks from Murray credited same upon older unsecured accounts due to them by Murray, claiming that the indebtedness of the joint undertakers due them remained unpaid and that. they were entitled to payment of such unpaid indebtedness by said joint undertakers and their surety, the Metropolitan Casualty Insurance Company of New York.

Plaintiffs further alleged that, by reason of the use, misapplication, and conversion of the alleged trust funds of the joint undertakers, certain defendants above named are indebted to plaintiffs in the respective amounts set out in their petition opposite the names of said respective defendants, for which said amounts they pray judgment.

Defendant W. L. Macatee & Sons by answer denied generally the allegations of the plaintiffs, and by cross-action sought recovery against the plaintiffs and Metropolitan Casualty . Insurance Company jointly for $417.05, the value of material furnished Murray in the construction of the building in question.

Defendant Steves Sash & Door Company denied generally the allegations of the plaintiffs, and by cross-action sought judgment against the plaintiffs Thos. M. Murray, the First Methodist Church, South, and the Metropolitan Casualty Insurance Company of New York.

Defendant Powers Plastering Company denied generally the allegations of the plaintiffs, and by cross-action sought recovery against Thos. M. Murray, the plaintiffs, Metropolitan Casualty Insurance Company of New York, and the First Methodist Church, jointly and severally.

Defendant Vandaveer, Brown & Stoy denied generally the allegations of the plaintiffs, specially pleaded the two-year statute of limitation, and by cross-action sought to recover against the plaintiffs, the Metropolitan Casualty Insurance Company, and Thos. M. Murray.

Defendants Peden Iron & Steel Company and Carter Lumber Company each denied generally the allegations of the plaintiffs, and by cross-action sought recovery against the plaintiffs and Thos. M. Murray.

The cross-plaintiffs, next above named, six in number, specially alleged that Thos. M. Murray and the plaintiffs were partners or joint undertakers in the erection of the building in question, and that the sums sued for by them as set out in their respective cross-petitions were the obligations created by said partnership.

All other defendants, a hundred or more, answered, but, as none of them are in any manner made parties to the appeal by the appeal bond now before this court, we deem it unnecessary to state the nature of their respective pleadings.

The foregoing statement has been taken from the pleadings of the numerous parties, more than one hundred in number, covering 431 pages of the transcript, and we believe it is sufficiently fair and accurate to enable us to make a comprehensive disposition of the issues presented to us.

The case was tried before the court without a jury and judgment was rendered wherein it is recited that "on the 29th day of October, 1932, the court took the cause under advisement, and now, having heard the pleadings and the evidence and argument of counsel, and being fully advised in the premises, finds in favor of the plaintiffs as against the defendant Thomas M. Murray," and upon such findings judgment was accordingly rendered.

Upon the evidence as a whole, the court rendered judgment decreeing that the plaintiffs take nothing against any of the defendants except Thomas M. Murray, and that the cross-plaintiffs Vandaveer, Brown & Stoy, Steves Sash & Door Company, Powers Plastering Company, Peden Iron & Steel Company, W. L. Macatee & Sons, and Carter Lumber Company recover of the plaintiffs and the Metropolitan Casualty Insurance Company of New York, respectively, the following sums: Vandaveer, Brown & Stoy, $295.20; Steves Sash & Door Company, $4,893.66, which included an attorney's fee of $750; Powers Plastering Company, $4,104.94; Peden Iron & Steel Company, $113.56; W. L. Macatee & Sons, $415.05; and Carter Lumber Company, $23.00.

From the six judgments next above stated, and only such, the plaintiffs W. Horace Williams Company, Inc., W. Hor-

ace Williams, individually, and the Metropolitan Casualty Insurance Company of New York, as surety, have appealed to this court.

We shall not undertake a discussion of the matters and things relating solely to the many and several judgments not appealed from, as they must, in the absence of such appeal, stand undisturbed. We shall confine our remarks, as near as possible, to a discussion and disposition of the issues presented by this appeal relative to the decrees and awards made by the court from which the appeal has been perfected.

For reversal of the judgments rendered for the cross-plaintiffs from which an appeal has been perfected, appellants contend that it was shown by the evidence and found by the court that, prior to the furnishing of certain services and material to Thos. M. Murray for the construction of the improvements in question by said cross-plaintiffs, Thos. M. Murray had owed to said cross-plaintiffs certain sums arising out of other construction jobs being carried on or having been completed by him; that, subsequent to the furnishing of such services and material to Thos. M. Murray for the construction of the improvements for the Methodist Church, such construction being a joint undertaking between W. Horace Williams and W. Horace Williams Company and Thos. M. Murray, he (Murray) had paid to said cross-plaintiffs certain sums of money from a deposit made by Thos. M. Murray in the First National Bank as "Thos. M. Murray Special Account," which sums so deposited were funds of the joint undertakers, Thos. M. Murray and W. Horace Williams Company and W. Horace Williams individually; that said payments so made to said cross-plaintiffs were received and applied to the payment of antecedent individual debts due by Thos. M. Murray to said cross-plaintiffs; that, had such funds so paid to cross-plaintiffs been applied to the payment of the debts for which the joint undertakers were responsible, the balance due to said cross-plaintiffs by the joint undertakers, and for which balance cross-plaintiffs were awarded judgment, would have been substantially reduced or extinguished.

Wherefore the court erred in rendering judgment against appellants as to those cross-plaintiffs who received such joint funds from Thos. M. Murray in payment of the individual antecedent debts due by Murray to them; that such holding of the court is erroneous, even though said appellees at the time had no knowledge or notice, actual or constructive, as found by the court, that Murray was insolvent or that the funds so received were funds of the joint undertakers.

Appellants further contend that the court erred in concluding and holding that the appellees who received funds of the joint undertakers from Murray which appellants call trust funds, without notice that such funds were funds of the joint undertakers, could lawfully apply such receipts to the extinguishment of antecedent individual debts of Thos. M. Murray.

We overrule all of such contentions.

The trial judge filed findings of fact and, among other findings, not material to the disposition of the issues now under consideration, he found as follows:

"I find that Thomas M. Murray, W. Horace Williams Co., Inc., and W. Horace Williams were engaged as joint adventurers in the erection of the First Methodist Episcopal Church Educational Building and Remodeling job.

"During all of the times material hereto and at the time of the execution of the contract between plaintiffs and Murray, and during all of the time of the construction of the building, Thomas M. Murray carried a personal account in the Union National Bank of Houston, Texas, which account was carried in the name of 'Thomas M. Murray.' All checks which Murray drew on the Union National Bank were signed by him 'Thomas M. Murray.' Murray carried his personal account in the Union National Bank for several years prior to the transactions involved herein and had been accustomed to paying his debts and obligations in Houston by checks drawn by him on his personal account in the Union National Bank and signed 'Thomas M. Murray.'

"From time to time Murray withdrew funds from the 'Thomas M. Murray, Special' account in the First National Bank and deposited such funds from time to time in his personal account in the Union National Bank. From time to time sums were withdrawn by Murray from the account known as his personal account in the Union National Bank and deposited such sums in the 'Thomas M. Murray, Special' account in the First National Bank.

"I find that all payments on estimates received by Murray from the First Methodist Church construction work for remodeling and the Educational Building, were deposited by Murray in the First National Bank and credited by the bank to the 'Thomas M. Murray, Special' account.

"I find that the 'Thomas M. Murray, Special' account in the First National Bank was the account intended by said Murray to comply with his agreement with the plaintiffs for the creation of a separate bank account to be used in the construction work of the First Methodist Church jobs.

"I find that all checks drawn by Murray on the account in the First National Bank were signed by him 'Thomas M. Murray, Special.'

"I find that none of the defendants in this case had, during any of the times material to this suit, any notice or knowledge, actual or constructive, of the agreement between Thomas M. Murray and the plaintiffs, and that none of the defendants at any time had any notice or knowledge whatever, actual or constructive, that the plaintiffs or either of them had any interest in or claimed any interest in any of the moneys or funds involved herein. I find that in each and every instance where any defendant received any moneys or checks as a payment by Murray on his personal obligations, that such defendant received such payment in good faith in satisfaction of a bona fide obligation due the said defendant by the said Murray, and that said defendant received such payment in the general and usual and ordinary course of business.

"I further find that the checks received by the said respective defendants after being so received, were duly cashed at the bank on which they were drawn by the defendant to whom payable, and the money actually received by the defendant to whom the check was payable and credited on the obligation of the said Murray, long prior to the time any defendant received any notice or had any knowledge of the claim of the plaintiffs or the claim of either of the plaintiffs or the interest of the plaintiffs in the said joint venture fund, or of the contract and relationship between the plaintiffs and the defendant Murray.

"I find that Thomas M. Murray handled the above mentioned construction work in his own individual name only, and that in financing said work he borrowed the money from the First National Bank of Houston in his own individual name, but upon the security of the guaranties above set out; that he made all contracts for labor and material, and contracts of every nature connected with the joint venture work, in his own individual name only. I find that it was the understanding between Murray and the plaintiffs that the construction work, contemplated in the contracts with the Methodist Church and in the agreement evidenced by the letters hereinabove set out between the plaintiffs and Murray, were to be handled in the name of Thomas M. Murray only, and that the plaintiffs W. Horace Williams Co., Inc., and W. Horace Williams were to be silent partners or joint adventurers, and to remain in the background in said work and that said W. Horace Williams Co., Inc., and W. Horace Williams were not to be known in the matter. I find that during the time that said work was in progress and being financed, neither Thomas M. Murray nor W. Horace Williams Co., Inc., nor W. Horace Williams, nor any other person ever disclosed to any of the defendants in this case, nor to the public generally, the existence of the agreement evidenced by said letter whereby Thomas M. Murray and W. Horace Williams Co., Inc., and W. Horace Williams were to share the profits and losses on said construction work.

"I find that during all times material to the suit that the said Murray deposited in his account in the First National Bank 'Thomas M. Murray, Special' the total sum of $396,414.41. His deposits in said bank consisted of deposits from the following sources: $200,695.89 received by Murray as the total of all payments from the First Methodist Church on the remodeling job; $38,400.00, which was represented by checks which Murray drew on this 'Thomas M. Murray, Special' account, but which he did not use and subsequently redeposited in the account; money borrowed by Murray from the First National Bank, $86,900.00; $51.11 represented by money transferred by Murray from his personal account in the Union National Bank, but being funds actually belonging to the joint venture and deposited by Murray in the First National Bank; $33,-129.89, represented by money transferred by Murray from his personal account in the Union National Bank and belonging

to Murray individually and deposited by him in the 'Thomas M. Murray, Special' account in the First National Bank."

The trial court also found that all the funds which appellants insist were misapplied, with the sole exception of one small item of $48.50 paid to Peden Iron & Steel Company, were paid to certain of the defendants by checks drawn against the personal account of Thomas M. Murray in the Union National Bank.

None of the above-stated findings are challenged by appellants.

Appellants in their seventh proposition state that the First National Bank had received a telegram from appellants advising it that guaranties by appellants were to provide funds for the erection of improvements undertaken *by appellants and Thomas M. Murray.*

Such statement is not supported by the record. The court did not, and could not under the undisputed evidence of Murray, make the finding attributed to him by appellants, but, to the contrary, the court found that the bank had no notice or knowledge of such joint undertaking. Such finding was supported by undisputed testimony of Murray relative to the joint undertaking by appellants and himself, where he said: "It was handled in my name only and they (appellants) were in other words silent partners, in the background; they were not to be known in it."

In appellants' brief the following statement is made: "Succinctly stated, the situation involved in this appeal is simply this: W and M (meaning appellants) were joint adventurers; a joint adventure fund was established; from this fund Murray withdrew funds and paid them to his private creditors in satisfaction of pre-existing debts. The outstanding question of law involved is whether or not such creditors can retain as against Williams the funds for which they gave nothing save the extinguishment of their claim against Murray."

In view of the unchallenged findings of the trial court, there is no merit in appellants' contention last stated. By section 25 of article 5933 of our Negotiable Instruments Act (Revised Civil Statutes 1925), it is provided as follows: "Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value; and is deemed such whether the instrument is payable on demand or at a future time."

It is well settled by the decisions of our courts that one who receives negotiable paper, such as in the present case, without notice of prior equities, in payment of antecedent obligations, is a bona fide holder for value. Steere v. Stockyards National Bank (Tex. Civ. App.) 266 S. W. 531 (writ of error denied), and authorities there cited, including Herman v. Gunter, 83 Tex. 66, 18 S. W. 428, 29 Am. St. Rep. 632.

Though the partnership funds intrusted to Murray are to be considered as "trust funds," as such term is generally understood, appellants cannot recover such of the same as Murray, the partner or trustee, paid to his creditors for the extinguishment of their indebtedness against him, when at the time of such payment such creditor had no notice or knowledge of the trust or partnership character of the funds so paid.

As said in Stephens v. Board of Education, 79 N. Y. 183, 35 Am. Rep. 511: "It would introduce great confusion into commercial dealings if the creditor who, receives money in payment of a debt is subject to the risk of accounting therefor to a third person who may be able to show that the debtor obtained it from him by felony or fraud. The law wisely, from considerations of public policy and convenience, and to give security and certainty to business transactions, adjudges that the possession of money vests the title in the holder as to third persons dealing with him and receiving it in due course of business and in good faith upon a valid consideration."

In Perry on Trusts (7th Ed.) § 815C, p. 1389, it is said: "When a trustee uses funds of the estate to pay a pre-existing debt, the creditor who has no notice of the trust character is not charged with the trust. He is under no obligation to inquire where the money came from, and would be entitled to retain it even if it should later appear that the debtor had stolen it."

In Pomeroy's Equity Jurisprudence, § 1048, vol. 3, p. 2019, that eminent authority says: "If a trustee or other fiduciary person in violation of his own duty, uses trust money to pay an antecedent debt of his own to a creditor who has no notice of the breach of trust, or that the money

is subject to the trust, in such a manner that the money is received as a general payment and not as a distinct and separate fund, then the money becomes free from the trust, and cannot be followed by the beneficiary into the hands of the creditor, although, in general, antecedent debt does not constitute a valuable consideration."

The rule was very forcefully stated in the case of Lime Rock Bank v. Plimpton 17 Pick. (34 Mass.) 159, 28 Am. Dec. 286, in this language: "For although it is true, that the sale by an agent, without authority, of property other than money may be disavowed, and set aside in the case of a bona fide purchaser, yet in respect to money the law is otherwise; not only because money has no ear mark and cannot easily be identified, but because a different doctrine would be productive of great mischief."

In Metz v. First National Bank of Filer, 45 Idaho, 444, 262 P. 1051, 1052, the court said: "It would seem to be the quite generally accepted rule that, if a trustee, in violation of his own duty, uses trust money to pay an antecedent debt of his own to a creditor who has no knowledge of the breach of trust, or notice of facts sufficient to put it upon inquiry, as to the true character of the funds, then the money becomes free from the trust, and cannot be followed by the beneficiary into the hands of the creditor."

In Burnett v. Gustafson, 54 Iowa, 86, 6 N. W. 132, 134, 37 Am. Rep. 190, it is stated: "It is claimed that the bank must account for the moneys, because it received it in payment of a pre-existing debt. Whatever may be regarded as the proper rule respecting the transfer of other property in payment of existing debts, it cannot be denied that the receipt of money in that manner is in accord with the usual custom of business. A want of bona fides cannot be attributed to the party who surrenders the evidence of an existing debt in consideration of money paid."

For further authorities see Texas State Bank v. First National Bank (Tex. Civ. App.) 168 S. W. 504; First National Bank v. City National Bank, 102 Mo. App. 357, 76 S. W. 489.

The rule above stated relative to payment of money has been repeatedly held to apply also to negotiable paper.

A distinction between the rule relied upon by appellants in this case and the one which we think is applicable is forcibly stated in the case of First Nat. Bank v. Bank, 213 Ill. App. 485. In that case a bank paid out money to a forger who, in turn, paid it to another bank in satisfaction of an indebtedness due by him. The court in the case referred to held that the bank which had paid out the money could not recover it from the bank to which it had been paid, saying: "In discussing this question it should be borne in mind that a distinction exists in law between money and negotiable paper on the one hand and personal property upon the other. As to the former, the title passed by the mere delivery, if made in good faith and for value. For the reason that the business of the country is transacted by the mere delivery of money and commercial paper properly indorsed by one to another, and if the receiver should be restricted in his right to retain only such as the payor had actual title to, then such restriction would hamper the business of the country, and in fact destroy the usefulness of money as a circulating medium with which to transact business. The law makes no distinction between commercial paper not due and money. They are both treated differently from other classes of personal property with reference to the passing of the title. 'The rule is well settled at common law that a bona fide holder of money or negotiable paper, transferable by mere delivery and not overdue, who has taken it in the usual course of business, and for a valuable consideration, acquires a perfect title.'"

In Holly v. Missionary Society (C. C. A.) 92 F. 745, 748, affirmed in 180 U. S. 284, 21 S. Ct. 395, 45 L. Ed. 531, it is said: "It is immaterial, therefore, whether the check received by the missionary society is treated as money or as commercial paper. In either form, as it was taken bona fide, and in payment of a debt, no part of the amount can be reclaimed by the complainant."

What we have above stated disposes of appellants' contentions made by their propositions 1 to 8, inclusive, adversely to them.

■ Appellants' ninth and tenth propositions are as follows:

"Having found that there were some defects in the materials furnished to Thomas M. Murray by Steves Sash & Door Company for the construction of the improvements undertaken by the joint adventure, the court erred in concluding that

plaintiffs and Thomas M. Murray were not entitled to offset any damages against the said Steves Sash & Door Company on its account against the said Murray and plaintiff as joint adventurers."

"The court erred, in its judgment, in refusing to allow plaintiffs an offset against the cross-action of Steves Sash & Door Company for the back charges claimed by Murray against Steves Sash & Door Company."

We overrule such contentions. The trial court made the following findings and conclusions:

"1. Steves Sash & Door Company, under a written proposal, furnished mill work to Thomas M. Murray, contractor, for use in the completion of the improvements, and that there is a balance unpaid upon the reasonable and agreed value of the mill work so furnished by Steves Sash & Door Company of $4893.66.

"2. That there were defects in some of the flat mill work furnished by Steves Sash & Door Company, but that said mill work was shipped by Steves Sash & Door Company in open packages, and that the defects complained of were not latent defects, but could have been discovered by a reasonable inspection of the material prior to the time any finish was applied to the same by the painter.

"3. That the contract and specifications contained the following provisions:

" 'Art. 13. Inspection of Work. The architect and his representatives shall at all times have access to the work whenever it is in preparation or progress, and the contractor shall provide proper facilities for such access and inspection. Inspections by the architect shall be promptly made and where practicable at the source of supply.'

" 'Art. 355. Mill Work. All finish shall be applied on the work in a horizontal position and in a dry well-ventilated and heated room.'

" 'Art. 393. Painting. This contractor shall see to it that all surfaces, which are to be painted or varnished, are clean, smooth, warm and in perfect condition to receive his work. Do all sanding, wire brushing and scraping of metal and woodwork as required to produce a first-class job in every respect. No paint shall be applied to any surface which is not in condition to receive it, or if temperature is too low for good results.'

"4. That an inspection of the material, prior to the time finish was applied to it by the painters, was in the contemplation of the parties, and that the damage claimed by Murray for said defective materials was not in contemplation of the parties, but resulted from the failure of Murray to properly inspect the material prior to acceptance by Murray and the application of the finish by the painting contractor, which, under the evidence, was Thomas M. Murray, doing business as the Fidelity Paint Company.

"5. That Murray personally made an inspection of some of the material when the same reached the building site and before any finish was applied to the material, which inspection was satisfactory to him and that he accepted the material.

"6. That no complaint was made by Murray as to the condition of the material until after the material was accepted by Murray and finish had been applied to all of it, and practically all of the material had been permanently incorporated.

"7. That all of the damages claimed by Murray and the Metropolitan Casualty Insurance Company of New York in the back charges consist of expense incurred in work done upon the material after the material had been accepted by Murray."

The court also filed his conclusions of law as follows: "I conclude from the foregoing facts that the defendant Murray *accepted* the material in its then condition and thereby waived any defects which may have existed at the time of delivery of the same; that the damages claimed by him against the Steves Sash & Door Company did not proximately result from the defective condition of the material, and that said defendant Murray is not entitled to offset said damages against the claim of Steves Sash & Door Company; that Steves Sash & Door Company is entitled to recover against said Murray and the Metropolitan Casualty Insurance Company of New York for the unpaid balance of $4893.66, plus $750.00 attorney's fees, as allowed in the judgment, and interest as provided therein."

We agree with the following statement made by appellee Steves Sash & Door Company in its brief: "The evidence shows, and the court found, that Murray discovered the defects, and could have discovered them, and that instead of acting upon the discovery prior to the time the mill work was incorporated in the

building, that he waived such defects as may have existed and incorporated the material in the building. The evidence shows that the defects in the mill work could have been remedied for a nominal sum and this amount Steves Sash & Door Company was perfectly willing to pay, but instead of pursuing the course required by law, Murray saw fit to incorporate the material into the fabric of the building and for this reason the court held that he was not entitled to recover damages claimed by him 'which did not proximately result from the defective condition of the material.'"

In support of our conclusions we quote from the following authorities:

"A fair opportunity to inspect the property delivered under the contract of sale is, in the absence of fraud, regarded as the equivalent of inspection." Ferguson v. Johnson (Tex. Civ. App.) 205 S. W. 512, 514.

"If the purchaser accepts the goods without protest, especially after inspection or an opportunity to inspect, he waives the defects in the quality." Corpus Juris, vol. 55, p. 413; Seay v. Diller (Tex.) 16 S. W. 642; Deadrick v. Rice, 26 Tex. 567; Continental Lumber Co. v. Miller (Tex. Civ. App.) 145 S. W. 735.

"An acceptance may be indicated by the exercise of act of ownership, or acts inconsistent with the ownership of the seller, as by removing the goods from the place of delivery, branding cattle, changing the nature, et cetera." Corpus Juris, vol. 55, p. 497.

"Generally, acceptance will be implied if the buyer retains and uses the goods as his own.

"Where the buyer of a carload of lumber, having the right before the acceptance to unload the lumber for inspection, knew by examination of the lumber in the car that it did not conform to the contract, the unloading of the lumber constituted acceptance." American Lumber Co. v. Hardwood Lumber Co., 140 Ark. 544, 216 S. W. 23.

"The sale of three safes. Suit by purchaser for purchase price. Defendants claimed the safes were not the kind and quality bought. The defects were patent but the defendant used them. Held, that such use amounted to an acceptance and plaintiff could recover." Edwards v. Wooldridge, 52 Tex. Civ. App. 512, 115 S. W. 920.

For other authorities see Maney v. Greenwood, 182 N. C. 579, 109 S. E. 636; 55 Corpus Juris, 1190.

By appellants' eleventh and last proposition it is insisted that the bond executed by Thomas M. Murray and Metropolitan Casualty Insurance Company bound the principal and surety thereon only to pay to obligees "any expenses for the enforcement of the contract of the bond." Wherefore the court erred in finding as a fact that said bond obligated said principal and surety to pay attorney's fees incurred by materialmen furnishing materials to Murray, and upon such finding rendering judgment in favor of Steves Sash & Door Company for $750 as an attorney's fee.

We overrule appellants' contentions. The bond in question contains the following recitals:

"If the principal shall faithfully perform said contract according to the terms, covenants and conditions thereof, by the principal to be performed, and shall pay all sub-contractors, workmen, laborers, mechanics and furnishers of materials, as their interest may appear, then this obligation shall be void, otherwise to remain in full force and effect."

"And it is further agreed that should the obligees be put to any expense for the enforcement of the contract of this bond, the same shall be paid by the principal and surety to the owner, subcontractors, workmen, laborers, mechanics, and furnishers of material as their interest may appear."

That the Steves Sash & Door Company, who furnished material for the construction of the improvements undertaken by Murray, the principal, are made obligees by the language of the bond, and not only the Methodist Church, we think there can be no doubt. The trial court found that the bond was payable to the owner (church) and all materialmen, that the principal and surety by the bond bound themselves to the performance of the contract and for the payment of all laborers and materialmen, furnishing labor and material for the erection of the buildings in question, together with an attorney's fee incurred by reason of their failure so to do, and that the sum of $750 is a reasonable fee for the services of the attorney who represented Steves Sash & Door Company in the prosecution of said suit.

We have reached the conclusion that the judgments described in the appeal bond hereinbefore mentioned should be affirmed, and that all other judgments and decrees of the trial court remain undisturbed.

### Addendum.

Since writing the foregoing opinion, we are informed by the clerk of this court that by leave of this court appellants filed in this court on the 19th day of January, 1935, an amended supersedeas appeal bond, reciting· that on the 31st day of December, 1932, judgment was rendered decreeing that plaintiffs take nothing by their suit as against all defendants except Thomas M. Murray and American Elevator & Machine Company. The amended bond is made payable to all of the. defendants in the suit, 105 in number. Such amended bond was delivered to the clerk of this court on the 10th day of January, 1935, and it was by the clerk filed on said date and placed in a safe for safe-keeping, and was not discovered by us until we had written the opinion above shown.

It is shown by the record that the several decrees made by the trial court disposing of 109 defendants were rendered on the 31st day of December, 1932; that appellants in due time gave general notice of appeal from the judgment of the court, and on the 30th day of January, 1933, filed an appeal bond, which reads as follows:

"W. Horace Williams Company, Inc., et al., vs. Thomas M. Murray, et al.
"No. 162,254
"In the 55th Judicial District Court of· Harris ·County,· Texas.

"Whereas, in the above entitled and numbered cause pending in the District Court of Harris County, Texas, and at regular term of said court, to-wit: on the 31st day of December, A. D. 1932, the defendants in said cause, to-wit: Vandaveer, Brown & Stoy, a corporation; Steves Sash and Door Company, a corporation; Powers Plastering Company, a corporation; Peden Iron & Steel Company, a corporation; W. L. Macatee & Sons, a partnership composed of Leonard S. Macatee, Joseph I. Macatee, George P. Macatee, Mrs. Mary Gruenwald, and Mrs. Cora McEnnis; and· Carter Lumber Company, a corporation, recovered judgment against the plaintiffs, to-wit: W. Horace · Williams Company, Inc., W. Horace Williams, an individual, and the Metropolitan Casualty Insurance Company of New York, a corporation, for the total sum of Ten Thousand Five Hundred and Ninety-five and 41/100 ($10,595.41) Dollars, the amount of each defendant's judgment being as follows:

1. Vandaveer, Brown & Stoy... $ 395.20
2. Steves Sash & Door Company    4,893.66
3. Powers Plastering Company..   4,104.94
4. Peden Iron & Steel Company      113.56
5. W. L. Macatee & Sons......      415.05
6. Carter Lumber Company.....       23.00

with interest thereon as provided in said judgment, and all costs of suit, from which judgment the said plaintiffs have taken an appeal to ·the Court ·of Civil Appeals for the First Supreme Judicial District of Texas at Galveston, in the County of Galveston.

"Now, therefore, we, W. Horace Williams Company, Inc., W. Horace Williams, individually, and the Metropolitan Casualty Insurance Company of New York, as principals, and the Commercial Casualty Insurance Company, as surety acknowledge ourselves bound to pay the *said defendants* the sum of Twenty-five Thousand ($25,-000.00) Dollars, conditioned that the said appellants shall prosecute their appeal with effect, and in case judgment of the Supreme Court or the Court of Civil Appeals shall be against them, they shall perform their judgment, sentence, or decree, and pay all such damages as said court may award against them. (Italics ours.)

"Witness our hands this, the 30th day of January, A. D. 1933.
"W. Horace Williams Company, Inc.
"By A. D. Dyess
"W. Horace Williams
"By A. D. Dyess
"Metropolitan Casualty Insurance Company of New York
"By A. D. Dyess·
"Principals.
"Commercial Casualty Insurance Company
"By Jno. Young
"Surety.
[Seal.]"

The transcript, containing 532 pages, was filed in this court on the 24th day of April, 1933. Upon motion of appellants, filed in this court on January 10, 1935, they were granted permission to file, and they did thereafter, on the 19th day of January, 1935, file in this court, the amended bond above described.

The question is now presented as to whether or not the amended bond confers upon this court jurisdiction over the defendants who were not named in the original bond, filed January 30, 1933, as parties to any judgment rendered, nor in any way whatever.

The original bond, which we have copied herein, is perfect in form and substance, and we think clearly shows that appellants intended to appeal only from those judgments rendered in favor of the six parties named in such bond as appellees.

We are inclined to hold that the amended bond, filed more than two years after final judgment was rendered and entered, wherein and whereby the judgments appealed from are recited to be judgments in favor of six named cross-plaintiffs against appellants only, does not confer jurisdiction over other defendants in the suit. Such should be the proper rule to apply in such circumstances, but, the matter being doubtful, we uphold the amended bond.

In any event, we find and hold that under the unchallenged findings of the court the judgment rendered as a whole should be in all things affirmed, and it is so ordered.

Affirmed.